OPINION OF THE COURT
Meyer, J.
Is an attorney who holds in his special account the proceeds of settlement of a personal injury action guilty of larceny when his withdrawals from the special account reduce its balance to less than the amount to which his precedessor attorney has been held entitled as his share of the fee? We hold that the predecessor attorney did not by reason of the order fixing the amount of his fee have "property” in or ownership of the money held by the successor attorney, as the terms "property” and "owner” are defined by section 155.00 of the Penal Law. We hold further that the fact that the proceeds were in a special or "attorney’s” account did not make them trust funds held for the benefit of the outgoing attorney. We conclude, therefore, that the withdrawals by the successor attorney from the special account did not constitute a larceny and, accordingly, reverse and dismiss the indictment. Since the indictment is being dismissed, we do not pass upon the other claims of error advanced by defendant.
The indictment of defendant KeefFe is based upon a factual complex which begins with the death of Frieda Gracie, wife of Thomas Gracie, in 1966, leaving Mr. Gracie and a two-month-old son surviving her. Contending that the death of his wife was the result of medical malpractice, Thomas Gracie retained attorney Alfred D’lsernia, who obtained the issuance of limited letters as administrator to Mr. Gracie and commenced a malpractice action against the doctors and hospital claimed to have been responsible for Mrs. Grade’s death. Unsatisfied with the lack of progress of the lawsuit, Gracie in 1973 asked defendant KeefFe to take over the wrongful death action and in October, 1973 an order permitting substitution was made by the Queens County Surrogate. The question of D’lsernia’s right to a fee and to a lien were left undecided and were referred to the Trial Judge. KeefFe thereafter brought suit on *154 behalf of the administrator against DTsernia for legal malpractice.
Late in 1974 the wrongful death action was tentatively settled by Keeffe for $120,000. In the compromise approval proceeding that followed, DTsernia claimed a lien on the settlement proceeds for his fee. Ultimately it was agreed thajt the malpractice action against him would be dropped and that his share of the fee would be $2,500. An intermediate order was made April 7, 1975 providing in part that "the administrator be permitted to withdraw and pay out the amount of $2,500 to Alfred L. DTsernia, Esq. representing the fee to which he is entitled as former attorney for the petitioner, and that said amount shall be charged against the balance of counsel fees due to the attorneys for the estate”. The order made no other direction or provision with respect to DTsernia fee, but did permit partial distributions to defendant Keeffe’s law firm and to Thomas Gracie. Within a few days after the order settlement checks totaling $120,000 payable jointly to Gracie as administrator and defendant’s law firm were received, indorsed and deposited in the firm’s attorney’s account.
A final decree was not entered in the Surrogate’s Court until December, 1978. In the intervening period defendant Keeffe had made part of the distribution to Thomas Gracie provided for in the intermediate order but no payment at all to DTsernia. The firm’s attorney’s account in which the $120,-000 settlement proceeds had been deposited was, however, during that period depleted. Defendant claimed to have received authorization from Thomas Gracie to invest the remainder of the amount distributable to him in debentures of a real estate project in which defendant was a principal. With respect to the $2,500 fee due DTsernia, defendant contended that the claim of another law firm, predecessor of DTsernia, the absence of authorization by Gracie, and the absence of a final decree in the estate proceeding were the reasons why payment had not been made. Payment was in fact made to DTsernia when the final decree was entered, which was, however, after return of the indictment of defendant in this proceeding.
The indictment charged defendant with three counts of grand larceny in the second degree in stealing $46,500 from the estate, in stealing $16,500 from Thomas Gracie and in stealing $2,500 from Alfred DTsernia. The jury convicted defendant of the third count but acquitted him of the first two *155 counts. The Appellate Division affirmed, without opinion. The appeal is before us by leave of a Justice of the Appellate Division.
Larceny is committed when one wrongfully takes or withholds "property from an owner thereof’ with intent to deprive the owner of it or appropriate it to himself (Penal Law, § 155.05, subd 1), or with such intent takes or withholds another’s property by "common law larceny by trespassory taking” (subd 2). "Property” means "money * * * thing in action * * * or any article, substance or thing of value” (Penal Law, § 155.00, subd 1) and an "owner” is defined by subdivision 5 of that section as a "person who has a right to possession thereof superior to that of the taker * * * or withholder.” While the statute itself does not require proof that the defendant intended to deprive the specific true "owner” of his property, but rather requires proof only of the fact that the defendant intended to deprive "another”, the People in this case explicitly limited their claim on the third count to the concept that defendant stole specifically from D’lsernia. By reason of the order of April 7, 1975, it was claimed, $2,500 of the money held in defendant’s attorney’s account became the "property” of D’lsernia and D’lsernia became the "owner” of that $2,500 within the meaning of the foregoing statutes. Nothing in the order or in statute, rule or decision sustains that concept.
An understanding of the effect of the order of April 7, 1975[1] requires review of the rights and obligations of an attorney with respect to fees and to money held in so-called "special” accounts. With but two exceptions the rendition of services by an attorney gives rise to nothing more than a contract claim, express or implied, by the attorney against his client. The two exceptions are the attorney’s retaining and charging liens. The first entitles the attorney to retain all papers, securities or money belonging to the client which come into his possession in the course of his professional employment until the amount of his fee is fixed by agreement or by litigation and is paid (Matter of Cooper [McCauley], 291 NY *156 255; Matter of Heinsheimer, 214 NY 361; Matter of Desmond v Socha, 38 AD2d 22, affd 31 NY2d 687; see 3 NY Jur 545, Attorney & Client, §§ 128-130). While it is possessory it has no bearing on this case because DTsernia never had possession of the proceeds of the action and in any event never asserted such a lien. The second entitled the attorney at common law to a lien upon the judgment only, but has been expanded by statute to give a lien upon the client’s cause of action from the commencement of the action (or if a proper notice is served, prior to such commencement), which attaches to the judgment and the proceeds of the judgment and cannot be affected by settlement between the parties (Judiciary Law, §§ 475, 475-a; Matter of City of New York [USA-Coblentz], 5 NY2d 300, 307, cert den 363 US 841; Fischer-Hansen v Brooklyn Hgts. R. R. Co., 173 NY 492; Goodrich v McDonald, 112 NY 157; see 3 NY Jur 556, Attorney & Client, § 135).
When by the retainer agreement the client expressly assigns a portion of the cause of action proceeds to his attorney the attorney acquires at the time the agreement is signed a vested property interest which cannot subsequently be disturbed by the client or anyone claiming through or against the client (Matter of City of New York [USA-Coblentz], supra, at pp 307-308). Absent express language of assignment, however, the attorney has no ownership or immediate right to possession (cf. Matter of Herlihy, 274 App Div 342) and must obtain enforcement of his lien by appropriate order of the court in which the action is pending (Hovey v Elliott, 118 NY 124; Judiciary Law, § 475 ["The court upon the petition of the client or attorney may determine and enforce the lien”]). Such an enforcement order may direct that the lien be satisfied out of money or property to which the lien attaches even though it is not in the possession or control of the attorney (Matter of Cooper [McCauley], supra, at p 260; Goodrich v McDonald, supra, at pp 163-166).
An attorney’s charging lien may be lost if he voluntarily withdraws or is discharged for misconduct, among other ways (Matter of Dunn, 205 NY 398, 401; Fischer-Hansen v Brooklyn Hgts. R. R. Co., supra, at p 502; 3 NY Jur 587, 588, Attorney & Client, §§ 157, 158). Generally, however, if an attorney is discharged without cause he will be allowed a charging lien upon the proceeds of the lawsuit, the amount to be determined on a quantum meruit basis at the conclusion of the case (Matter of Shaad, 59 AD2d 1061; Reubenbaum v B. & H. *157 Express, 6 AD2d 47), and his fees will be made a charge included within the fees to which the incoming attorney will be entitled (Reubenbaum v B. & H. Express, supra, at p 50).
In the instant case, however, there is no evidence that the DTsernia retainer agreement contained language of express assignment which would have given him a property interest in the action. The order of substitution, moreover, did not allow him a charging lien. Rather it expressly referred the questions of DTsernia’s right to both a fee and a lien to the Trial Justice, taking that course presumably because of the claim of malpractice on DTsernia’s part. The order of April 7, 1975, however, while it determined that DTsernia was "entitled as former attorney for petitioner” to a fee of $2,500, directed that that amount be charged against the counsel fees due defendant’s firm, and authorized the administrator to withdraw and pay that amount to DTsernia, contained neither any determination of DTsernia’s right to a lien nor any direction for enforcement by DTsernia of his right to the money, although DTsernia was a party to the proceeding and the order recites that it was made on consent. While there can be a larcenous taking from a lienor who has the object of his lien in his possession (People ex rel. Travis v Sheriff of Cortland County, 275 App Div 444; cf. Hovey v Elliott, 118 NY 124, 134, supra, but compare id., at p 139, 143), here DTsernia never had possession of the settlement proceeds and his right to a charging lien put in issue by the malpractice action and in the substitution proceeding has never been adjudicated to have continued after the substitution. It follows that all that he had, and all that the April 7, 1975 order adjudged him to have, was a contract right to recover a fee, not any "property” or "owner” interest superior to that of defendant in the proceeds of settlement of the malpractice action (cf. Matter of Dunn, 205 NY 398, supra; see 3 NY Jur 399, Attorney & Client, § 14). The People’s argument, which the dissent accepts,[2] that DTsernia was the owner of the money rather than a creditor of Keefie’s is wide of the mark. The owner of the money was not Keeffe and not DTsernia, but was Thomas Gracie as administrator, subject to Gracie’s obligation to pay for the services of each. The order of April 7, 1975 did no *158 more than authorize Gracie to pay DTsernia, without specifying any particular time for payment. Defendant could, perhaps, have been properly charged with having stolen the $2,500 referred to in the third count from Gracie, but the order in question did not give D’Isernia "property” or make him "owner” of the $2,500 within the meaning of the Penal Law.
Nor, contrary to the theory of the Trial Judge, does the fact that the proceeds of the settlement had been deposited in defendant’s attorney’s account make them "trust” funds and as such a subject larcenous taking (cf. People v Yannett, 49 NY2d 296). The Rules of the First, Second and Fourth Departments require that attorneys practicing in those departments not commingle clients’ funds and deposit them in a separate special account (22 NYCRR 603.15, 691.12, 1022.5) and the First and Second Department Rules also require that the proceeds of settlement of a personal injury or wrongful death action be deposited in such an account (22 NYCRR 603.7 [d] [1], 691.20 [d] [1]). Nothing in those rules, however, establishes a trust interest in those funds in anyone other than the client.
The only other pertinent regulation is the Code of Professional Responsibility which in Disciplinary Rule 9-102 mandates that "All funds of clients paid to a lawyer or law firm * * * shall be deposited in one or more identifiable bank accounts” and that the attorney shall "Promptly pay or deliver to the client as requested by a client the funds * * * in the possession of the lawyer which the client is entitled to receive.” Those provisions have been applied many times to discipline an attorney who draws upon his special account to such extent that its balance is reduced to less than his clients’ interest in it (Matter of Iversen, 51 AD2d 422; see, also, Matter of Roberts, 68 AD2d 320; Matter of Daly, 67 AD2d 354; Matter of Prospero, 62 AD2d 490; Matter of La Cava, 53 AD2d 204). It is not, however, violated by the failure to pay money to a third person to whom the client is obligated (Matter of Kelly, 23 NY2d 368, 382).[3] In the Kelly case, the attorney *159 settled a negligence action and furnished a closing statement showing a deduction of $150 for a medical bill, which, however, was never paid. There was no evidence of an assignment by the client to the doctor, nor did the doctor hold any lien for the payment of his bill. We reversed the Appellate Division’s order confirming the referee’s report that failure to pay the medical bill constituted misconduct and dismissed the specification. Here, as in Kelly, there is, as already noted, no evidence of any assignment to D’lsernia and the charging lien to which he was originally entitled, called into question upon substitution because of his claimed malpractice, has never been adjudicated in his favor.
Many reasons can be articulated for not escalating the failure to meet a contractual obligation into a criminal offense. Not the least of these is the question of when payment is due under an order such as that of the Surrogate’s Court in this case which authorized but did not direct payment and included no specific provision with respect to the time of payment. If acts of that type are to constitute criminal offenses, it should be through adoption by the Legislature of a specific statute such as section 79-a of the Lien Law, or section 223.8 of the Model Penal Code, or under existing Penal Law provisions after the clearly stated duty in relation to payments to third persons suggested in the proposed Model Rules of Professional Conduct. On the facts of this case, defendant’s depletion of his attorney’s account without paying DTsernia’s $2,500 therefrom did not constitute larceny from D’lsernia. Since that was the theory on which the People proceeded defendant’s motion for dismissal of the third count should have been granted.
For the foregoing reasons, the order of the Appellate Division should be reversed and the third count of the indictment dismissed.

. The People’s brief refers to "orders” of April 7, 1975 and May 10, 1975. No order of May 10 appears in the record forwarded by the county clerk to this court. Apparently the reference is to the decision of May 14, 1975 on which no order or decree other than the 1978 final decree was ever entered. It is hornbook law that until its directions are embodied in an order or decree a decision has no legal significance (CPLR 5512; 10 Carmody-Wait 2d, NY Prac, p 281, § 70.12).

. The dissent is in error in its characterization of the April 7, 1975 order for the reasons outlined in the text. It is in error also in stating that "funds were withdrawn from the estate and turned over to defendant * * * to pay them to Alfred DTsernia” for the settlement funds went directly into the Keeffe law firm’s attorney’s account.

. The American Bar Association has proposed that the Code of Professional Responsibility be replaced by Model Rules of Professional Conduct. Rule 1.12 of the Model Rules requires that property of clients or third persons in a lawyer’s possession be held in trust. Of interest also are section 223.8 of the Model Penal Code, entitled "Theft by Failure to Make Required Disposition of Funds Received”, not adopted when the New York Penal Code was revised, which makes the failure to pay a known legal obligation subject to payment of which property has been received, theft, and section 79-a of the Lien Law which expressly makes the misapplication of funds *159 received for the payment of contractor’s claims "larceny and punishable as provided in the penal law”.