■ JAMES L. WILLIAMS et al., Respondents, v HERTZ CORPORATION, Third-Party Plaintiff-Appellant, et al., Defendant. NEW BRITAIN HERALD PUBLISHING COMPANY, INC., Third-Party Defendant-Respondent. WALTER J. BOYLES, Appellant, v KENNETH HELLER, Respondent. — Order, Supreme Court, New York County (Pecora, J.), entered, upon reargument, January 12, 1982, and the judgment based thereon entered January 14, 1982, both reversed, on the law and the facts and in the exercise of discretion, insofar as they pertain to substituted attorney appellant, Boyles, and on the facts and the law, insofar as they pertain to defendant-appellant and third-party plaintiff-appellant Hertz Corporation; substituted attorney appellant Boyles' motion to vacate the default taken against him at a hearing and inquest in respect of the fee claimed by original attorney respondent Heller granted; and the proceedings taken at that inquest vacated; and the matter remanded for hearing anew; and the claim of original attorney respondent Heller against defendant-appellant and third-party plaintiff-appellant Hertz Corporation dismissed, with costs and disbursements to defendant-appellant and third-party plaintiff-appellant Hertz Corporation, payable by original attorney respondent Heller, and without costs and disbursements to or against any other party. The tortuous windings of this unnecessarily complicated proceeding were the direct result of failure by a lawyer to extend common professional courtesy, first, to clients,

and then to a colleague at the Bar. As far as the husband and wife plaintiffs are concerned, their case having been settled, their roles are only as witnesses to a lawyer-client episode almost defying description. Plaintiff James Williams had sustained injuries in an automobile accident in which a truck, owned by defendant Hertz Corporation and operated by defendant Dewhurst as the employee of third-party defendant-respondent New Britain Herald Publishing Company, Inc., was the offending vehicle. Husband James and wife Gloria Williams, the latter pursuing a derivative cause, retained original attorney respondent Heller after the injured husband had been released from a seven-week stay in hospital. Heller had process served on Hertz in March, 1976. Hertz, in turn, commenced a third-party action against New Britain, the truck driver's employer, but Heller never followed up with a direct action against that company. Eventually a note of issue was filed, and the case appeared for trial on the calendar of September 6, 1978 — and was promptly stricken therefrom. In the following month, Heller called client James to his office, where he came, accompanied by wife Gloria. Friction ensued between Heller and Gloria. Then Heller sent a scolding letter to James, complaining of Gloria's visit, calling for co-operation, and directing James, when again summoned to the office, to "come alone, without anyone who will attempt to push their way into my office * * * If you feel that you cannot cooperate with me in the above-described manner, then I suggest you obtain other counsel." James did as suggested, retaining substituted attorney appellant Boyles, who promptly moved for substitution and turnover of the case file. Special Term directed that the file be handed over, subject to a lien, the amount of which would be ascertained at conclusion of the action. Heller appealed (75 AD2d 766, 766-767), and this court modified "to the extent of remanding to Special Term for a hearing to determine whether the outgoing attorney was discharged without cause, and if so, whether he is entitled to compensation, and if so, in what amount, with payment to be deferred and to be made from any recovery in the action * * * Should it be determined that the outgoing attorney is entitled to compensation, he shall have a lien on the proceeds in that amount. However, an attorney who is discharged for cause or misconduct has no right to the payment of fees and no retaining lien on his client's papers * * * In view of plaintiff's claims of discharge for cause, a hearing is in order." Following this interruption, the case-in-chief against Hertz was pursued by Boyles. He avers that, while proceeding with preparation, he learned from one of Hertz' attorneys during negotiations that, following the substitution, that attorney had been told by Heller that plaintiff James had been "dead drunk" at the time of the accident. The potential harm to plaintiffs' case is obvious because, whether true or not as to either the telling or the repetition, it would have caused untold damage to settlement possibilities. If Heller did this, it was an act of professional disloyalty; if it had been revealed by James to him in confidence, it was obvious professional misconduct to pass on the information. Be that as it may, Boyles further states that, in pursuing this information with James Williams, he encountered a tale of attempted subornation of perjury in Heller's office. These accusations require exploration in the new hearing we order. Boyles proceeded with preparation, procured restoration of the case to the calendar, selected a jury, and then settled the case for $50,000. Heller moved into action, scheduled a hearing as directed by this court, and then adjourned it twice. Before the third date arrived, Boyles, never a well man, had suffered a myocardial infarction, and the case was again adjourned because Boyles was in hospital.* The next trial date found him on another case and, in any event, the Williamses and other witnesses were not available due to

---

\* He was known to suffer from diabetic neuropathy and was also afflicted with throat cancer, causing him to use a voice box. Even so, he carried on a trial practice.

illness and other causes. Though he dispatched a secretary to court with an affidavit, a default was taken, and the matter was assigned to a referee to take an inquest. The referee ruled that Boyles was in default and, the burden being on plaintiffs to prove discharge for cause, that the issue must be determined in Heller's favor. It is our view that an abuse of discretion occurred when the Justice presiding, knowing of Boyles' difficulties, and particularly that Heller had "out-adjourned" Boyles, refused one final adjournment. We do not find the facts sufficient to prove the type of situation which would require use of the procedure detailed in CPLR 321 (subd [c]); however, Heller did know of Boyles' difficulties and, despite that knowledge, pressed for immediate disposition of the hearing. We characterize what occurred, particularly in the face of the multiple issues to be tried, professional discourtesy on the adversary's part and a concomitant abuse of judicial discretion. The inquest proceeded without a single word presented on the subject of misconduct or professional disloyalty. An award of 75% to Heller of the one-third fee was recommended, that amount being $15,000, the referee finding that Heller had brought the case to the point of having filed a note of issue, apparently seen as the equivalent of actual readiness for trial. This is difficult to understand because, when the case had been called for trial, it was stricken from the calendar, to be restored later by Boyles. A motion to confirm was made by Heller at once and, in opposition, Boyles, again not in condition to go to court, sent a letter — unfortunately addressed incorrectly to a Justice other than the one who had noted the default. It did, however, eventually reach the proper Justice, who — improperly — ignored it, and, on reargument, confirmed the referee's report. The issues tendered must be tried out. Such acts of professional misconduct, including disloyalty, breach of confidentiality, the allegation of subornation, failure to sue the truck driver's employer, abandonment and mishandling in permitting removal from the calendar, as well as disregarding a client's interests by withholding the file, professional discourtesy by delay till Boyles had become seriously ill and then pressing unfairly — all these, and more, were charged and should be thoroughly gone into at the full new hearing which we order. Particularly as they are serious accusations against a lawyer, they should not be disposed of on default. Only one aspect of the appeal remains for consideration: the judgment against Hertz and Boyles both on the theory that payment of the amount of settlement, as well as its receipt by Boyles, had violated a charging lien. Very simply stated, at the time Hertz paid out and Boyles accepted the settlement payment, there was no charging lien in existence. It had not been — still has not been — "determined that the outgoing attorney is entitled to compensation". (75 AD2d 766, 767, *supra*.) It will not be determined until the issues have been tried at the hearing we order. (See *People v Keeffe,* 50 NY2d 149, 157.) Concur — Sandler, J. P., Sullivan, Markewich and Milonas, JJ.