OPINION OF THE COURT
Leon A. Beerman, J.
The defendants, David Hirsch and Richard Alfaro, are charged in the indictment with (1) insurance fraud in the first degree and (2) attempted grand larceny in the second degree in violation of section 176.20 and sections 110.00 and 155.35 of the Penal Law.
A bench trial was held before this court on October 4, 5, 6, 7, 11 and 12, 1983, and decision reserved on all pending motions. After thorough consideration of the evidence adduced at trial the court makes the following findings of fact and conclusions of law.
The defendant, Hirsch, owner of a 1978 Rolls Royce, Corniche convertible, had an accident on February 24, 1981, when he struck a Long Island Lighting utility pole sustaining damages to the automobile. At the time of the accident the defendant, Hirsch, was insured with Liberty Mutual Insurance Company (hereinafter referred to as Liberty) for property damage.
*805 In response to the claim for compensation, Liberty delegated an appraiser to estimate the damages.
Mr. Allan Pollard, an appraiser for the auto adjustment bureau inspected the vehicle, prepared an appraisal report and took five photos of the damaged auto. An itemized estimate indicated damage to the extent of approximately $29,000.
The defendant, Hirsch, received the full coverage payment of $25,000 from Liberty and the additional $4,000 from the excess insurance carrier.
Thereafter the defendant, Hirsch, canceled his policy with Liberty on May 27, 1981, although the expiration date was January 21, 1982, and there was no premium increase.
The defendant Hirsch applied for new coverage with the New York Assigned Insurance Plan (assigned risk) and Metropolitan Property and Liability Insurance Company (Metropolitan).
Prior to the issuance of the policy an agency known as Careo was designated to conduct a visual inspection of defendant Hirsch’s motor vehicles (including a Jaguar).
Mr. Thomas DiBlasi was directed to make the inspection for Careo. He visited the premises of the defendant, Alfaro, where the cars were to be seen, and filed written reports that the motor vehicles, to wit: the Rolls Royce and the Jaguar were both in good physical condition. However, at the trial DiBlasi admitted he never did actually view or inspect the Rolls Royce. At the time of his visit, he inquired of the defendant, Alfaro, to see the Rolls Royce and was told that it was being used at the time and that there was a photo available which DiBlasi accepted in lieu of the personal inspection. The witness, DiBlasi, was candid and forthright in his testimony in that he admitted he never saw nor knew of the actual physical condition of the Rolls Royce as of the time of the “inspection” on July 1, 1981.
In order to obtain a vehicle inspection certificate the Rolls Royce was taken by an employee of the defendant, Alfaro, to the E & L Gas Station to be inspected.
The motor vehicle inspection record maintained by E &L Gas Station indicated that the Rolls Royce was inspected *806 and a certificate sticker issued on August 13, 1981. However, the owner of the gas station denied having inspected the car and the individual whose signature appeared on the log sheet denied ever subscribing to the document and could not recall making any such inspection.
Nevertheless, the policy with Metropolitan was issued effective as of May 28,1981 and expiring on May 28,1982.
On January 4, 1982, the defendant, Hirsch, filed an MV104 with the New York State Department of Motor Vehicles reporting an accident on December 8, 1981, sustaining property damage to the Rolls Royce. A subsequent statement of the accident was filed with Metropolitan claiming that the defendant Hirsch’s Rolls Royce was forced off the road by an unknown vehicle causing the defendant, Hirsch, to collide with a concrete stanchion resulting in damages to the front of his vehicle.
Mr. Jack Kelly, the appraiser for Metropolitan, in response to the accident report filed with the company inspected the Rolls Royce on December 23, 1981, at the premises of the defendant, Alfaro, and took several photographs.
No written appraisal or estimate of damages was made or reported to Metropolitan.
During the pendency of the claim the defendant, Hirsch, contacted Metropolitan to inquire when payment for the damages sustained would be forthcoming.
Metropolitan contacted Liberty with respect to the prior claim and compared the photographs taken after each accident. After such investigation the claim was rejected and reported to the Insurance Frauds Bureau.
The defendant, Alfaro, claimed that he had received $10,000 from defendant Hirsch for repairing the Rolls Royce after the accident on February 24, 1981. There was additional testimony from one Louis Taliescio who stated he repaired the vehicle and was paid $3,000 by the defendant Alfaro. Although he stated the vehicle was cosmetically good he did not use any new parts and was able to refinish and repair all the damaged parts of the vehicle.
The People contend that the vehicle was never repaired after the February accident; that sometime after February *807 defendants Hirsch and Alfaro devised a plan to defraud Metropolitan Insurance Company by reporting a second accident which in fact never occurred.
It is the defendant’s position that the vehicle was repaired, returned to defendant Hirsch and was then involved in a second accident. In the alternative, defendant posits that no written statement was ever filed by defendant Hirsch as required under section-176.20 of the Penal Law.
With respect to the People’s contention that there was no second accident, they adduced expert testimony which indicated that the damage to the vehicle depicted in the pictures in Liberty’s file (People’s exhibit 5) came from the same accident as the damage depicted in the pictures in Metropolitan’s file (People’s exhibit 16). Although the angles at which the pictures were taken were different, it was uncontroverted that the damage reflected in the photos was caused by a single accident. Defendant’s contention that the photos were mishandled when sent by Liberty to Metropolitan for inspection and that Metropolitan’s photos were actually from the Liberty file proved to be unfounded. Although the independent appraiser who took the pictures for Liberty after the February accident could not identify specifically each photo from Liberty’s file as the photos he took, the appraiser from Metropolitan, Jack Kelly, was able to identify the photos from the Metropolitan file as the ones he took of the car in December, 1981. Additionally, People’s expert, Dr. Morfopoulos’ testimony indicated that although the photos were of the same car they were not reproductions of the same photos but were actually shots taken from different angles, substantiating the People’s contention that the photos were taken nine months apart.
Further the court notes that although it is not unusual for a person to try and spend less when repairing a damaged vehicle, the fact that a man who owns a car valued well in excess of $100,000 would permit it to be repaired without the use of any new parts does appear somewhat unusual. Further, it strains credulity that a Rolls. Royce which was appraised as having over $29,000 worth of damage could be totally repaired by one man, using no new parts, for $3,000. .
*808 The court therefore reaches the conclusion that there was in fact only one accident and that the alleged second accident was actually staged by defendants Hirsch and Alfaro for the purpose of making a second insurance claim.
With respect to defendant’s alternative contention, that the written statement relied upon by the People is insufficient under the statute, the court notes the recent enactment of the Penal Law section (1981) and the paucity of case law thereunder, and relies heavily upon the statutory language and legislative intent as evidenced by the legislative memoranda (Executive Memoranda, McKinney’s Session Laws of NY, 1981, p 2617).
Section 176.20 of the Penal Law states:
“A person is guilty of insurance fraud in the first degree when he commits a fraudulent insurance act and thereby wrongfully takes, obtains or withholds, or attempts to wrongfully take, obtain or withhold property with a value in excess of one thousand five hundred dollars.
“Insurance fraud in the first degree is a class D felony.”
Under section 176.05: “A fraudulent insurance act is committed by any person who, knowingly and with intent to defraud presents, causes to be presented, or prepares with knowledge or belief that it will be presented to or by an insurer or purported insurer, or any agent thereof, any written statement as part of, or in support of, an application for the issuance of, or the rating of an insurance policy for commercial insurance, or a claim for payment or other benefit pursuant to an insurance policy for commercial or personal insurance which he knows-to: (i) contain materially false information concerning any fact material thereto; or (ii) conceal, for the purpose of misleading, information concerning any fact material thereto.”
The crux of defendant’s argument is that no written statement constituting a claim for payment was ever made to Metropolitan Insurance Company by defendant Hirsch. That the statement relied upon by the People, a form which Metropolitan required its insureds to fill out whenever an accident occurred, whether or not a claim for payment was being made, is beyond what is contemplated by the statute.
*809 Under subdivision 2 of section 176.00 the term “statement” includes: “ ‘Statement’ includes, but is not limited to, any notice, proof of loss,.bill of lading, invoice, account, estimate of property damages, bill for services, diagnosis, prescription, hospital or doctor records, x-ray, test result, and other evidence of loss, injury or expense.”
In that regard the court recognizes that the definition of the term “statement” in subdivision 2 of section 176.00 is not so much a definition as it is a catalogue of some of the instruments that constitute a “statement” for the purposes of the article. However, included in that catalogue and in fact, first on the list, is. “any notice”. “Written” however, does not necessarily require the claim must be in writing. The court concludes that the written statement applied to the notice supporting a claim and that the claim in and of itself does not have, to be in writing. It is inescapable that defendant Hirsch sent in a written notice of an accident occurring on December 8, 1981. Certainly if that accident did not take place, then the statement alleging it must be regarded as fraudulent. The fact that an insurance company requires a written notice on their own form makes the reporting of such accident no less fraudulent.
Although the evidence indicated that defendant Hirsch did call the Metropolitan office and ask when a check would be forthcoming, the People failed to sustain their burden in proving beyond a reasonable doubt the statement was meant to be a claim for a payment in excess of $1,500. The court cannot simply regard the statement as a claim for payment and circumstantially ascribe a specific value to the repairs without additional proof of such cost. Therefore, the People having proven a fraudulent insurance act, but having failed to prove the value thereof to the defendants, the court finds both defendants guilty of violating section 176.10 of the Penal Law committing an insurance fraud in the third degree, a class A misdemeanor.
With respect to the indictment for attempted grand larceny in the second degree, due to lack of proof on the issue of value, the court must reduce the charge to attempted petit larceny. Based upon the evidence that defendant Hirsch intended to collect some amount of money *810 from Metropolitan, the court finds defendant Hirsch guilty of the charge of sections 110.00 and 155.25 of the Penal Law, attempted petit larceny, a class B misdemeanor. With respect to defendant Alfaro, there was no evidence linking him to the attempted larceny and that charge is dismissed. All other contentions of the defendant are found to be without merit and all motions upon which decision was reserved are denied in accordance with this decision.