*755 OPINION OF THE COURT
Anne G. Feldman, J.
Defendant, an attorney, stands convicted after a three- and one-half month jury trial, of conspiracy and several counts of insurance fraud, grand larceny, offering false instruments for filing, criminal solicitation, bribing a witness and violating Judiciary Law § 482, which prohibits attorneys from employing lay persons to solicit legal business on their behalf.
With the exception of the criminal solicitation convictions, defendant now moves, pursuant to CPL 330.30, to set aside the entire verdict. After reviewing the submitted memoranda, this court denies the motion in all respects.
A brief summary of the complex facts underlying defendant’s convictions helps place the legal arguments in context.
Defendant and three other attorneys in his law office handled a large volume of automobile accident cases. The sources of many cases were "chasers” who defendant routinely compensated for each client referred. In order to conceal this network of "chasers”, defendant falsified the names of the referrers on Office of Court Administration (OCA) retainer statements.
By arrangement with several doctors to whom he regularly sent his clients, defendant procured fraudulent medical reports which he submitted to insurance companies whose insureds were potential defendants of personal injury claims; there was evidence that in at least 20 instances [1] insurance companies settled these claims for sums in excess of $1,500.
Defendant withheld from his clients a larger percentage of the settlement proceeds than that authorized by Appellate Division rules governing contingency fee cases (Rules of App Div, 2d Dept, 22 NYCRR 691.20 [e]). To conceal this larceny, defendant filed with OCA closing statements on which he misrepresented the monetary distribution he had made to his clients. Moreover, despite his assertions to the contrary, he failed to send copies of these statements to his clients, who, therefore, were unaware of his misrepresentations.
Finally, upon learning that some of his former clients had been subpoenaed by a Grand Jury investigating his law prac *756 tice, defendant and others employed in his law office met with several of them and attempted to influence their testimony. On at least two occasions, defendant obtained attorneys to accompany former clients to the Grand Jury and provided these clients with money to pay the attorneys’ fees.
I — THE INSURANCE FRAUD CONVICTIONS
Defendant argues that the proof adduced in connection with the insurance fraud charges was insufficient to support the jury’s seven convictions for insurance fraud in the first degree (Penal Law § 176.20). That provision states: "A person is guilty of insurance fraud in the first degree when he commits a fraudulent insurance act and thereby wrongfully takes, obtains or withholds, or attempts to wrongfully take, obtain or withhold property with a value in excess of one thousand five hundred dollars” (emphasis supplied).
Penal Law § 176.05 provides, in pertinent part: "[a] fraudulent insurance act is committed by any person who, knowingly and with intent to defraud presents * * * to * * * an insurer * * * any written statement as part of, or in support of * * * a claim for payment or other benefit pursuant to an insurance policy for commercial or personal insurance which he knows to: (i) contain materially false information concerning any fact material thereto”.
Renewing an argument made at the close of the prosecution’s case, defendant asserts that because there was no evidence establishing what portion of the settlements was specifically attributable to the fraudulent medical reports, the verdict cannot stand. Citing the requirement under the grand larceny statute,[2] that the value wrongfully obtained must be shown, defendant maintains that the same element exists in prosecutions for insurance fraud.
The prosecution argues that unlike larceny, insurance fraud is a result-oriented offense. It asserts that by proving insurance company settlements for sums in excess of $1,500, it met its statutory burden.
*757 The statute in question is relatively new and the issue raised here has not yet been judicially determined.[3]
Although sparse, the legislative history of the 1981 amendments does reveal recognition that the type of fraud perpetrated against insurance companies requires special treatment (Governor’s program memorandum, 1981 NY Legis Ann, at 382-383; Governor’s approval memorandum, 1981 NY Legis Ann, at 383-384). From the trial testimony of the more than 15 insurance company representatives, as elicited by defendant on cross-examination, it is clear that there are no specific monetary guidelines governing settlement of personal injury claims. It is therefore unlikely that in fashioning a law to protect the insurance industry, the Legislature intended to impose evidentiary requirements which would make convictions for these newly created insurance fraud felonies virtually impossible.
The section under consideration (Penal Law § 176.20) was enacted in 1981 as part of article 176 — insurance fraud. Previously, the Penal Law had contained only a single misdemeanor statute prohibiting personal injury insurance fraud. That section (Penal Law former § 175.50 [presenting a false insurance claim]) prohibited knowingly presenting "with intent to defraud an insurer with respect to an alleged claim of loss upon a contract of insurance * * * a written instrument containing a false material statement relating to such claim.” The article 176 definition of a "fraudulent insurance act” is an almost verbatim reenactment of this quoted language. Under the new legislation "committ[ing] a fraudulent insurance act” is, in itself, insurance fraud in the third degree — a class A misdemeanor. The newly created felony-level first and second degrees of insurance fraud include as additional elements "wrongfully * * * obtaining] or, attempting] to * * * obtain * * * property with a value in excess of’ $1,500 or $250, respectively. While the Governor’s memorandum approving this 1981 legislation mentions that the three-tier insurance fraud system tracks that of grand larceny, there is no other mention of the relationship, if any, between the two statutes *758 (Governor’s approval memorandum, 1981 NY Legis Ann, at 384).
To construe Penal Law § 176.20 as requiring the same proof of value mandated for larceny convictions prosecutions under Penal Law § 155.30 renders purposeless the enactment of separate insurance fraud provisions: insurance fraud would mirror grand larceny by false pretenses, and prosecutions under the former could, for all intent and purposes, have been tried under the latter.
"[T]he legislature is not to be presumed to have done a vain thing in the enactment of a statute” (73 Am Jur 2d, Statutes, § 249, at 422). Such a result will be avoided where "the language is susceptible of a construction which preserves the usefulness of the section” (Armstrong Co. v Nu-Enamel Corp., 305 US 315, 333 [1938]; see also, Sunshine Coal Co. v Adkins, 310 US 381, 392 [1940]).
Absent a convincing showing of a legislative intent in accord with defendant’s suggested interpretation, this court declines to accept a construction which makes the 1981 statute duplicative of the already existing larceny provisions.
II — THE GRAND LARCENY CONVICTIONS
In attacking his convictions for grand larceny by embezzlement, defendant advances three separate arguments. None is persuasive.
Defendant first contends that the larceny convictions are repugnant to his convictions for insurance fraud. Arguing that the court’s larceny charge necessitated a jury finding that he "lawfully received” settlement moneys from insurers on behalf of his clients as the "owners” thereof, defendant reasons that the jury could not logically also have convicted him of "wrongfully tak[ing]” settlement proceeds from the insurance firms by fraudulent representations.
Assuming arguendo that defendant raised this issue before the jury was excused, he has misconstrued the law concerning repugnant verdicts. Repugnancy exists only if, from review of the court’s charge, it is manifest that the defendant was convicted "for a crime on which the jury has actually found [i.e., via acquittal on another charge] that the defendant did not commit an essential element” (see, People v Tucker, 55 NY2d 1, 6 [1981]). Thus, in the usual case, there can be no *759 repugnancy between the verdicts unless the material, essential elements of the two crimes are identical (People v Tucker, supra, at pp 7-8; People v Alfaro, 108 AD2d 517, 519 [2d Dept 1985], supra).[4]
Because defendant’s repugnancy argument here is in a novel factual context — after conviction on both charges — under the Tucker analysis, these two guilty verdicts would be repugnant only if a conviction on one charged crime requires a finding that defendant did not commit an essential element of the other. That is, the respective elements to be compared must be analytic opposites. They are not.
"Lawful receipt” of another’s property (an element of larcenous embezzlement) is not logically opposed to insurance fraud’s "wrongful taking”. In the context of this case, the former refers to obtaining lawful temporary possession of settlement proceeds, while the latter entails permanently appropriating these funds.
Defendant’s second attack on the larceny conviction is also flawed. He mistakenly concludes that because the medical reports supporting his clients’ personal injury claims were found fraudulent, the clients had no right to any settlement money and, therefore, were not "owners” of these proceeds within the relevant statutory definitions:[5]
" 'Owner.’ When property is taken, obtained or withheld by one person from another person, an 'owner’ thereof means any person who has a right to possession thereof superior to that of the taker, obtainer or withholder.
"A person who has obtained possession of property by theft or other illegal means shall be deemed to have a right of possession superior to that of a person who takes, obtains or *760 withholds it from him by larcenous means” (Penal Law § 155.00 [5]).[6]
Under these definitions, each client, as principal, had a right superior to his/her fiduciary agent — the defendant.
Defendant’s reliance on People v Keeffe (50 NY2d 149 [1980]) is also misplaced. The Keeffe decision focused on the respective rights of two attorneys over the proceeds of a special settlement account: It found no larceny by an attorney who depleted the settlement account below the dollar level required to satisfy a prior attorney’s lien on the settlement proceeds. In fact, the Keeffe opinion specifically points out that while the predecessor attorney’s lien did not create any ownership interest in the settlement proceeds, the defendant might properly have been charged with committing larceny against his client —the owner of the funds in that account. (People v Keeffe, 50 NY2d 149, 157-158, supra; see also, People v Lyon, 82 AD2d 516 [2d Dept 1981].) That an insurance company may have right to the settlement funds superior to that of the client does not negate the larcenous nature of defendant’s action visá-vis the same client.
Lastly, defendant assails the court’s larceny charge, which instructed the jury that it could consider evidence of defendant’s actual expenses on these cases in determining whether he wrongfully withheld from his clients portions of the settlement checks. He contends that this language impermissibly transferred to him the burden of proof, and "had the effect of taking from the jury defendant’s evidence that the bulk of his expenses for investigation and doctors’ reports were paid in cash for which no receipt was kept nor notation made”.
This argument, too, is without merit. The prosecution introduced a considerable amount of evidence, including defendant’s own case files, which established that his expenses on these cases were, at best, minimal.[7]
*761 In any event, the jury did have before it the testimony of a secretary in the defendant’s law office that there were typically many large cash expenses on individual cases which were not itemized in the case files. The court’s charge simply called to the jury’s attention, after a three and one-half month trial, the relevance of expense evidence. It did not direct it to consider any particular exhibit or testimony. These instructions cannot be blamed post hoc for the jury’s apparent failure to credit the defendant’s witness.
HI — THE BRIBERY CONVICTIONS
Defendant contends that the court’s instruction to the jury regarding bribery of a witness impermissibly modified a statutory requirement.
The relevant provision (Penal Law § 215.00) provides in pertinent part: "A person is guilty of bribing a witness when he confers, or offers or agrees to confer, any benefit upon a witness * * * upon an agreement or understanding that (a) the testimony of such witness will thereby be influenced” (emphasis supplied).
After reading the statute to the jury, the court elaborated upon its several elements as they applied to the two bribery counts, using the word "his” or "defendant’s” to precede "understanding”. Thus, it is claimed the court misconstrued the statutory requirement of a two-party "meeting of the minds” and misled the jury by instructing it to determine only defendant’s individual belief or intention.
"Understanding”, as used in the statute, is tantamount to defendant’s intent (People v Kathan, 136 App Div 303 [2d Dept 1910]). It is not necessary for conviction that the jury find the bribe’s intended recipient shared that intent.
IV — THE FALSE FILING CONVICTIONS
Defendant next attacks his conviction for offering a false instrument for filing in the first degree (Penal Law § 175.35) which concerned his submission of retainer and closing statements containing false information to OCA.
Initially, defendant contends that the prosecution failed to prove an essential element of this crime — "intent to defraud the State”. The court instructed the jury that "to defraud the State” means "to deceive or otherwise mislead an agency of the State with reference to a thing of value or a right, in this *762 case, the State’s right to regulate the conduct of attorneys registered to practice in this State”. Defendant asserts that a conviction under that charge requires direct proof of the State’s right to regulate attorneys, which he claims was not furnished.
There was ample evidence in the record from which the jury could have found: (1) regulatory authority in a State agency over attorney conduct, and (2) that defendant intended to mislead that agency into believing he was complying with its rules.
An OCA representative testified that his office maintains the filed retainer and closing statements on behalf of the Appellate Division; the court, at the District Attorney’s request, took judicial notice of the Appellate Division rules governing these documents; the retainer and closing statements containing the falsifications were introduced into evidence; and coconspirator Eugene O’Brien testified that defendant had told him he falsified these documents because he wanted to conceal his use of "chasers” and his withholding of moneys from his clients.
This evidence was certainly sufficient to support the jury’s conviction on these counts.
Defendant renews his argument that although falsification of retainer and closing statements may be a violation of the Appellate Division rules, it cannot constitute a basis for criminal prosecution. This court cannot agree. An attorney who submits false instruments may face disciplinary action by the Appellate Division. However, that same falsification also constituted the essential elements of a criminal offense. Defendant is not insulated from criminal liability merely because he may also suffer professional sanctions.
V — THE JUDICIARY LAW § 482 CONVICTION AND THE FAILURE TO TAKE JUDICIAL NOTICE OF AMERICAN BAR ASSOCIATION STANDARDS
Defendant’s last arguments — concerning the court’s failure to take judicial notice of certain American Bar Association standards, and the jury instruction on Judiciary Law § 482— were argued and decided during the trial. The court declines to reverse its previous rulings on those issues.
Accordingly, defendant’s motion is denied.

. Initially, the three indictments against defendant included in excess of 200 counts. At trial, the court directed the District Attorney’s office to restrict the number of counts on which evidence would be introduced. Accordingly, the prosecution presented evidence of approximately 20 instances of insurance fraud.

. Penal Law § 155.05 (1) provides: "A person steals property and commits larceny when, with intent to deprive another of property or to appropriate the same to himself or to a third person, he wrongfully takes, obtains or withholds such property from an owner thereof.” (Emphasis supplied.) The provision defining grand larceny in the second degree (Penal Law § 155.35) is violated when a person "steals property and when the value of the property exceeds one thousand five hundred dollars” (emphasis supplied).

. People v Alfaro (121 Misc 2d 804 [Sup Ct, Queens County], affd 108 AD2d 517 [2d Dept 1985]), cited by defendant, is not controlling. In Alfaro, the defendant’s fraudulent claim was rejected by the insurer. In the absence of evidence that defendant’s claim included any dollar amounts the court found defendant guilty only of the misdemeanor insurance fraud. The situation here, involving claims settled for a sum certain, is distinguishable.

. In People v Alfaro (108 AD2d 517), the Second Department has recently ruled that the elements of insurance fraud and grand larceny are not identical. However, the court does not consider this controlling precedent; Alfaro discussed only the intent elements of the two crimes, and involved the more typical repugnancy scenario not present here — an acquittal and a conviction. For the purpose of this decision, the court is assuming that there may be repugnancy between two guilty verdicts.

. It is worth noting that by this argument, defendant undermines his claim, discussed in point I, supra, that the prosecution failed to prove the value of the insurance fraud. If, as he states, "neither Kramer nor his client were entitled to the proceeds of any insurance claim” then the entire settlement amount received from each issue would constitute the value of the proven fraud — in each case, over $1,500.

. This provision, cited by defendant, elevating the possessory rights of a thief over those who take from him by larceny is simply not applicable to the instant case; defendant is both the "thief’ (insurance company defrauder), and the "withholder by larcenous means”. No client committed any larceny, or submitted any fraudulent medical reports to an insurance company.

. The court exercised its discretionary power pursuant to CPL 300.40 (6) (b) and reduced the number of counts submitted to the jury. This meant that the cases involving the larceny charges were not always the same as those submitted in connection with the offering of false instruments counts. Nonetheless, every closing statement introduced into evidence indicated there were no expenses incurred in connection with settling the case.