Alexander, J.
(dissenting). I cannot agree with the majority holding that defendants’ taking of the complainant’s property, found by the jury upon sufficient evidence to be wrongful and committed with larcenous intent, must go unpunished because the Legislature has not listed this type of taking in Penal Law *607 § 155.05 (2). Accordingly, I respectfully dissent and would affirm the Appellate Division order reinstating defendants’ convictions.
I
During the period from 1975 through the summer of 1984 complainant Mia Prior was a member of a communal organization, the Provisional Party of Communists (the party). Defendants Foster and Paolo, both attorneys, were also members of the party and provided various legal and other services to the organization. Membership in the party was a full-time commitment and the party provided assigned housing, food and other benefits, including medical and legal services, to its members. During her membership, Prior had been assigned to and stayed at various residences owned by the party, including apartments located at 415 East 12th Street and 145 West 55th Street in Manhattan. She listed 415 East 12th Street as her residence on her driver’s license, bank book and on various legal documents relating to her father’s estate.
In 1983 Foster assisted Prior with legal problems relating to her gravely ill father and after his death in March 1984, Foster handled the estate. After her father’s death, Prior became the beneficiary of a trust from which she received quarterly payments of approximately $7,500 deposited directly to her bank account.
Prior left the party on July 26, 1984, taking what she could carry from 145 West 55th Street, her assigned residence at the time. She wrote a letter criticizing the party’s activities and went to live with a family friend at 3657 Broadway, but did not advise the party of where she was going. Four days later, a forged check for $7,700 payable to "Harold Jones” and drawn on Prior’s account was cashed by two of Foster’s employees. A letter of authorization, allegedly signed by Prior but also forged, was presented to the bank with the forged check. The evidence established that Foster had arranged to have the two employees, Harold Jones and Mark Orrisch, cash the check and turn over the proceeds to him. As a result of Prior’s complaints to the bank, the forgeries were investigated and defendants were ultimately convicted on charges that are. not involved in this appeal.
In the meanwhile, a dispute developed between Prior and Foster concerning his legal fee and Prior retained new counsel who informed Foster that she did not intend to pay the bill. In *608 September 1984, after he had become aware of the forgery investigation, Foster commenced an action for legal fees against Prior and arranged for the commencement of an action against her for fees for medical services rendered to her father. Foster’s law firm was the named plaintiff in the legal fees action, with defendant Paolo acting as counsel. In the medical fees action, Foster represented the plaintiff, a professional corporation of physicians who were also party members.
The summonses in both actions were issued simultaneously and were given to a process server who worked for Foster and had some knowledge of Prior. The process server delivered the summons in the medical fees action to one Grant Hamilton at the 3657 Broadway address where Prior was residing. Prior received the summons and timely interposed an answer.
Notwithstanding that the process server had both summonses with him when he delivered the summons in the medical fees action and even though according to Hamilton’s testimony the process server was told only that Prior was out and would be back, the process server did not deliver the summons in the legal fees action to Hamilton at the Broadway address. The process server did not testify at the trial but Foster testified, in contradiction of Hamilton’s testimony, that the process server told him that when he delivered the medical fees summons at the Broadway address he was told by the person who accepted it that Prior did not live there. According to Foster, the process server was directed to deliver the summons in the legal fees action to the East 12th Street address and did in fact deliver the summons there to a James Rosenberg, a party member who knew both Foster and Prior. A copy of the summons was subsequently mailed to Prior at the East 12th Street address. Prior did not respond and a notice of default was sent by certified mail to her at the Broadway address. Acting on the advice of her attorney, she refused to accept the certified letter.
Defendants caused a default judgment to be entered based upon Paolo’s affirmation which stated that Prior had been "duly served” by delivery of the summons and notice at 415 East 12th Street, Prior’s "last known residence address”, and mailing to the same address. Similarly, Foster’s affidavit in support of the application for a default judgment stated that delivery had been made to a person of suitable age and discretion at 415 East 12th Street, Prior’s "last known address”. As defendants well knew, however, the relevant stat *609 ute provides that service by delivery to a person of suitable age and discretion must be made by delivery at the "actual place of business, dwelling place or usual place of abode” and mailing a copy of the summons to the "last known residence or * * * actual place of business” (see, CPLR 308 [2] [emphasis added]). Nevertheless, defendants procured entry of the default judgment and executed upon the judgment by levying against Prior’s bank account — obtaining over $7,000.
Defendants were indicted and charged, inter alia, with grand larceny in that they stole over $1,500 from Mia Prior (Penal Law §§ 155.05, 155.45). At trial the People proved that defendants obtained the money by deliberately purporting to serve Prior at an address where they knew she did not live, thus enabling them to fraudulently secure a default judgment and obtain property by executing on that judgment. The jury returned a verdict convicting defendants of larceny, but the trial court set the verdict aside because, in its view, when Civil Term granted Prior’s motion to vacate the default, it had necessarily found that personal jurisdiction had been acquired in the legal fees action. The Trial Judge thus concluded that the default judgment was valid and defendants’ execution thereon was not "wrongful” since they were acting under color of law (135 Mise 2d 1029, 1032). The Appellate Division reversed and reinstated the verdict, concluding that defendants acted without authority of law when, with the intent to deprive Mia Prior of her property, they wrongfully executed upon a default judgment they knew to have been obtained by improper service, deliberately made.
II
Despite this evidence conclusively establishing defendants’ guilt, the majority holds that obtaining property with larcenous intent, even if wrongful, does not constitute larceny under Penal Law § 155.05 if the property is obtained by a lawyer’s deliberate misuse of the judicial process. In reaching this result, the majority would limit the crime of larceny to the types of takings listed in subdivision (2) of the statute notwithstanding the significantly broad language of subdivision (1). Thus the majority would effectively insulate from any larceny prosecution those thieves clever enough to effect a wrongful taking of property through a deliberate and deceitful misuse of the judicial process.
The majority’s conclusion that this wrongful taking "is not *610 larceny as defined by the Legislature” because it is not a type of taking listed in Penal Law § 155.05 (2) (majority opn, at 605) ignores the plain language and structure of the statute. Subdivision (1) of Penal Law § 155.05 broadly defines larceny as a wrongful taking, obtaining or withholding of property "with intent to deprive another * * * or to appropriate the same to [oneself] or to a third person”. Without any indicated limitation of that subdivision, subdivision (2) further explains that "[l]arceny includes a wrongful taking, obtaining or withholding of another’s property, with the intent prescribed in subdivision one of this section,” committed in a number of specified ways (Penal Law § 155.05 [2] [emphasis added]). Given this inclusive rather than exclusive language, any wrongful taking committed with larcenous intent falls with the plain and natural meaning of the statute (People v Ditta, 52 NY2d 657, 660). Moreover, the majority’s novel construction of subdivision (1) as merely a pleading requirement rather than a substantive definition (majority opn, at 605) renders the subdivision mere surplusage since the pleading requirements for larceny are clearly outlined in Penal Law § 155.45. This strained and hypertechnical reading of the statute is contrary to the well-established rule that penal statutes are no longer to be strictly construed but are to be interpreted " 'according to the fair import of their terms to promote justice and effect the objects of the law’ ” (People v Ditta, 52 NY2d, at 660, supra; Penal Law § 5.00).
Nor can such a restrictive construction be justified because Penal Law § 155.45 was intended to provide a simplified method for charging and proving larceny and thereby remedy the common-law problem of thieves escaping liability because of the prosecution’s failure to charge or prove the particular methodology used (Donnino, Practice Commentary, McKinney’s Cons Laws of NY, Book 39, Penal Law art 155, at 104; see also, People v Johnson, 39 NY2d 364, 369; People v Karp, 298 NY 213, 216 [construing the predecessor statutes, former Penal Law §§ 1290, 1290-a]). Section 155.05 (1) complements this simplified pleading scheme by "establishing 'larceny’ in its broadly defined form regardless of the basic common law offense underlying the particular case” (Donnino, Practice Commentary, op. cit., at 98, quoting Staff Notes of Commission on Revision of Penal Law, Proposed New York Penal Law, McKinney’s Spec Pamph [1964], at 350-351). There is no indication, however, that the Legislature intended that this broad substantive definition be limited to the types of larce *611 nies listed in section 155.05 (2) and we have expressly stated that larceny can be committed under either subdivision. In People v Keeffe (50 NY2d 149, 155), construing the term "owner” in Penal Law § 155.05 (1), we explained that: "Larceny is committed when one wrongfully takes or withholds 'property from an owner thereof with intent to deprive the owner of it or appropriate it to himself (Penal Law § 155.05, subd 1), or with such intent takes or withholds another’s property by 'common law larceny by trespassory taking’ (subd 2)” (emphasis added).
People v Karp (298 NY 213, supra) and People v Johnson (39 NY2d 364, supra), relied on by the majority, are not to the contrary. In People v Karp (298 NY, at 216-217, supra), we held simply that when property is obtained by false pretenses, a type of larceny recognized at common law and subsequently listed in the larceny statute, the People must charge and prove what had always been required for that type of larceny —a deliberate misrepresentation of an existing, rather than a future fact.[1] We concluded that the larceny statute (former Penal Law § 1290) did not criminalize conduct which we had previously and repeatedly recognized as innocent because it did not constitute larceny by false pretenses (id., at 216; see, e.g., People v Blanchard, 90 NY 314, 324 [false promise to buy cattle at a future date is insufficient to establish larceny by false pretense]; cf., People v Rothstein, 180 NY 148, 152 [false statement of an existing order for the manufacture of goods is sufficient to establish larceny by false pretenses]). The defendants here, however, have not engaged in conduct ever recognized as innocent. To the contrary, a wrongful taking of property, committed with larcenous intent has always been recognized as criminal and such conduct is not rendered innocent simply because the Legislature has not expressly stated that larceny is committed when the taking is effected through the instrumentality of the court.
In People v Johnson (39 NY2d, at 368-370, supra), we held that a defendant charged with grand larceny could not be *612 convicted of petit larceny by false promise as a lesser included offense when the operative facts and physical locations of the two crimes were materially different. Plainly, such a rule has no application here.
Thus, any wrongful taking, obtaining or withholding of the property of another, committed with the requisite intent, constitutes larceny within the meaning of the Penal Law (People v Keeffe, 50 NY2d, at 155, supra). Moreover, "obtain” is broadly defined and includes "the bringing about of a transfer * * * of property or of a legal interest therein, whether to the obtainer or another” (Penal Law § 155.00 [2]). Arranging for the transfer of money through the execution of a default judgment certainly falls within this statutory definition, and if done wrongfully and with larcenous intent, constitutes larceny.[2]
The only remaining issue is whether the Appellate Division correctly determined that the evidence before the jury, viewed in the light most favorable to the People (People v Contes, 60 NY2d 620, 621) sufficiently established the elements of the crime. Defendants do not dispute that they intended to and did obtain property from Mia Prior. Rather, they argue that the evidence is legally insufficient because they acted with authority of law in executing the default judgment and therefore their actions were not "wrongful” (see, People v Ricchiuti, 93 AD2d 842, 844). As the Appellate Division found, however, ample evidence supports the jury’s determination that defendants wrongfully obtained the default judgment by deliberately serving Mia Prior at an address where they knew that she did not live.
On September 11, 1984, defendants served Prior in the medical fees action at 3657 Broadway, an address where they had reason to believe she was living after she left the party approximately six weeks earlier. Although the process server who delivered the medical fees summons also had the legal fees summons with him, he did not leave it at the same address. According to defendant Foster, the process server acted on information given to him by the tenant at 3657 *613 Broadway and delivered the legal fees summons to a party member at 415 East 12th Street, a residence owned by the party and a residence which was not even Prior’s "last known address” when she was a member of the party. Indeed, it is undisputed that when Prior left the party in July, she had been residing at the party residence located at 145 West 55th Street. Therefore, to the extent that the affirmation of Paolo and affidavit of Foster submitted in support of the application for a default judgment indicated that Prior had been served at her "last known residence”, they are false.
Moreover, in returning a guilty verdict, the jury obviously credited, as they were entitled to do, the testimony of Grant Hamilton and the other witnesses for the People and discredited Foster’s contradictory testimony. Thus the record amply supports the jury’s determination that defendants’ wrongfully obtained a default judgment against Prior and took her property by executing on that judgment with larcenous intent. The evidence, therefore, is legally sufficient to support their convictions.
Finally, I share the majority’s concern for honest lawyers and litigants, but such lawyers and litigants would in no way be jeopardized by an affirmance in this case. Clearly, honest lawyers and litigants are not exposed to the spectre of criminal liability for simply pursuing baseless lawsuits or for conduct which may be nothing more than an oversight (see, majority opn, at 606). The jury has determined that Foster and Paolo did not simply file a baseless lawsuit or advance a frivolous claim. Nor did they merely negligently hire a process server who without their knowledge failed to make proper service. Rather, these lawyers deliberately arranged for Prior to be served at an address where they knew that she did not live and, with the larcenous intention of wrongfully depriving Prior of her property, they obtained a default judgment and executed on that judgment. Such conduct falls within the plain meaning of larceny as defined in Penal Law § 155.05 (1) and should be punished as criminal.
Accordingly, I would affirm the order of the Appellate Division.
Judges Simons, Hancock, Jr., and Bellacosa concur with Chief Judge Wachtler; Judge Alexander dissents and votes to affirm in a separate opinion in which Judge Titone concurs; Judge Kaye taking no part.
Order reversed, etc.

. Indeed, the majority’s reliance on both People v Karp (298 NY 213) and People v Johnson (39 NY2d 364) for propositions much broader than the holdings of those cases is contrary to the well-established principles of stare decisis. It is basic that principles of law "are not established by what was said, but by what was decided, and what was said is not evidence of what was decided, unless it relates directly to the question presented for decision” (People ex rel. Metropolitan St. Ry. Co. v State Bd. of Tax Commrs., 174 NY 417, 447).

. The other jurisdictions considering this issue are in accord. (See, Commonwealth v Aronson, 312 Mass 347, 44 NE2d 679 [larceny committed by obtaining court order by forgery and misrepresentation]; Mowrey v State, 122 Tex Grim 456, 55 SW2d 816 [larceny committed when property acquired by fraudulently obtained court order]; Adler v Sheriff, Clark County, 92 Nev 436, 552 P2d 334 [filing false claim in judicial proceedings constituted attempted larceny]; People v Wallace, 78 Cal App 2d 726, 178 P2d 771 [false filing of civil suit constituted attempted larceny]).