In the Matter of the Petition of JOSEPH A. ALBRECHT and Others (Practicing Law as a Partnership under the Firm Name of ALBRECHT, MAGUIRE & MILLS), Petitioners, to Enforce an Attorney's Lien.

Supreme Court, Erie County, August 30, 1928.

**Attorney and client — attorney's lien under Judiciary Law, § 475 — petitioners were engaged to represent client in income tax matters — client engaged petitioners to represent several others — in client's own case refund was ordered — petitioners have no lien on said amount refunded — petitioners have no lien as against sums refunded to others — amount of compensation not determined, but petitioners must resort to action at law.**

The petitioners, who are attorneys at law, were engaged by the respondent to represent him and several others in income tax matters for the purpose of procuring readjustment and reduction of income taxes. As a result of the proceedings, the client engaging the petitioners was granted a refund of a small

amount. Before the other proceedings were determined the client discharged the petitioners, and they now seek to impress a lien upon the amount of the refund for their services.

The petitioners have no lien under section 475 of the Judiciary Law that may be impressed upon said refund, for the amount refunded may be paid by the government in cash or it may give the client credit therefor, and, furthermore, that fund is not within the jurisdiction of the court and there is no lien on money in the hands of the government.

The petitioners cannot have a lien against the sums refunded to others than their client for there can be no lien on the property of third persons, nor can they have a lien for services of counsel employed by them without the consent of their client.

The special function of proceedings to impress a lien, under section 475 of the Judiciary Law, is to protect attorneys from financially irresponsible clients, and, in this case, it does not seem that the respondent is financially irresponsible. Furthermore, the petitioners cannot have the value of their services rendered to their client or to the others, for whom they were engaged to act by their client, determined in this proceeding, but they must resort to an action at law to recover their fees.

PROCEEDING to establish lien of attorneys for services.

*William H. Watson*, for the petitioners.

*Donovan & Raichle* [*Carlos C. Alden* of counsel], for Menno A. Reeb, respondent.

NOONAN, J. This proceeding is brought to enforce an attorney's lien under the provisions of section 475 of the Judiciary Law. The petitioners are duly licensed attorneys and counselors at law engaged in the practice of their profession in Buffalo, N. Y., and elsewhere, and giving special attention to tax matters of all kinds.

There is no substantial dispute as to the facts. Shortly before October, 1924, Menno A. Reeb, the respondent, retained the petitioners herein to represent himself and his wife, Clara C. Reeb, individually, and also as trustee of Virginia C. Reeb; and his daughters Estelle R. Weiss, Lauretta R. Heinrich and Henrietta R. Schaefer, and the M. A. Reed Corporation, in various special proceedings instituted against the Commissioner of Internal Revenue of the United States to compel the cancellation of large amounts of income and excess profit taxes, for various years, which had been assessed against him and said other parties, and were claimed to be due the United States government; and also to compel the refund of income and excess profit taxes unlawfully assessed against said parties and collected by the United States government.

Thereafter the said petitioners appeared for the said parties above named in the following cases: *M. A. Reeb* v. *Commissioner of Internal Revenue*, Docket No. 9847; *M. A. Reeb* v. *Commissioner of Internal Revenue*, Docket No. 23502; *Clara C. Reeb* v. *Commis-*

*sioner of Internal Revenue,* Docket No. 10002; *Lauretta R. Heinrich* v. *Commissioner of Internal Revenue,* Docket No. 10001; *Estelle R. Weiss* v. *Commissioner of Internal Revenue,* Docket No. 10003; *Henrietta R. Schaefer* v. *Commissioner of Internal Revenue,* Docket No. 10000; *M. A. Reeb Corporation* v. *Commissioner of Internal Revenue,* Docket No. 12043.

Only the first matter, *M. A. Reeb* v. *Commissioner of Internal Revenue,* Docket No. 9847, was prosecuted to a definite conclusion. This involved deficiencies in taxes for the years 1919, 1920 and 1921. On or about October 9, 1924, said Menno A. Reeb received a notice from the Supervising Internal Revenue Agent at Buffalo, N. Y., that the examination of his income tax receipts for the above-mentioned years disclosed deficiencies as follows: $8,988.91, $12,710.53 and $31,262.42. After a protest had been filed there was a redetermination of the said taxes and the government then claimed a deficiency of $8,988.91 for 1919, and $50,178.98 for 1920, or a total of $59,167.89, and an overpayment for the year 1921 of $11,042.96 instead of the deficiency above set forth. Thereafter the year 1921 was dropped from the case but later on the government determined that there was a deficiency for that year of $18,510.85 instead of the overpayment above mentioned. Admittedly the collection of this amount was barred by the Statute of Limitations.

Thereafter the question of the amounts due for 1919 and 1920 was litigated. The petitioners took the necessary steps to bring the matter before the proper parties and finally brought the matter up for hearing before the United States Board of Tax Appeals, which finally determined that there was a deficiency for the year 1919 of $375.54 and an overpayment for the year 1920 of $2,071.66, leaving a net refund of $1,719.92 instead of the deficiency as claimed. The final determination in this matter was made on February 8, 1928, so that it was in charge of petitioners for about three years and five months. Soon thereafter the petitioners sent their bill for services to the respondent who refused to pay the same on the ground that it was excessive and forthwith discharged the petitioners as his attorneys.

The proceedings in all the cases were substantially alike, and all the remaining cases were on the docket of the United States Board of Tax Appeals for a hearing when petitioners were discharged as aforesaid, and thereby prevented from finishing the same.

The petitioners also allege that as a result of their efforts in various matters, refunds amounting to $18,689.60 have been received by parties other than Menno A. Reeb and the M. A. Reeb Corporation.

The petitioners were retained solely by said Menno A. Reeb to represent himself and said other parties. There was no agreement that the compensation of the petitioners would depend in any way upon the results obtained, neither was it to be fixed on a percentage basis. The relation established was simply that of attorneys and client, with an implied obligation on the part of the client to pay a reasonable fee for the services rendered. This theory is borne out by the fact that after the petitioners were discharged they sent separate bills for their services in all the unfinished cases to Reeb only.

Much of the preliminary services performed by the petitioners for respondent consisted in appearing before the Internal Revenue Department at Buffalo, N. Y., but trips to Washington were necessary in the orderly conduct of the business and for the hearing before the United States Board of Tax Appeals. They employed some outside counsel, apparently without the consent of the respondent, presumably attended to all the necessary details and secured a favorable result in the case they were permitted to finish, and in some other matters. However, it is not necessary, in deciding this motion, to consider the amount of work done by petitioners, nor its value. The sole problem is: Can the petitioners maintain this proceeding or must they resort to an action at law?

The attorney's lien for services existed under the common law. " It was a device invented by the courts for the protection of attorneys against the knavery of their clients, by disabling clients from receiving the fruits of recoveries without paying for the valuable services by which the recoveries were obtained." (*Goodrich* v. *McDonald*, 112 N. Y. 157; *Matter of Heinsheimer*, 214 id. 361.) It was never necessary for the courts to invent any device to protect an attorney whose client was financially responsible. He could adequately protect himself by an action at law.

The common-law distinction between " retaining " and " charging " liens still remains. (*Matter of Heinsheimer, supra,* 364, 365.) Under the former the attorney has a *general* lien for the entire balance of account upon all papers, securities or moneys belonging to his client, which came into his *possession* during the course of his employment and were *retained* by him. (*Matter of Heinsheimer, supra; Robinson* v. *Rogers*, 237 N. Y. 467, 470.) Such a lien can be sustained on the theory that the court will not permit the client to receive the benefit of services for which he has not paid, but there is no basis for it in this proceeding, as the petitioners do not claim the *possession* of anything to which the lien would attach. It seems that this lien has never been modified by statute. Also, it cannot be actively enforced. (6 C. J. 803, § 426.)

The " charging " lien is based upon the equitable doctrine that an attorney should be paid out of the proceeds of a judgment which his services obtained.  (6 C. J. 766, § 364; also footnote 85.)  It could also be sustained on the theory that the court has control over its own judgments and records.

Although the " charging " lien has been enlarged by statute (Judiciary Law, § 475) so that it now attaches to a cause of action before judgment, the courts have always confined it " strictly to fees and costs due for services in the particular suit in which the judgment is rendered."   (6 C. J. 770, § 368, and footnote 14.)

In *Williams* v. *Ingersoll* (89 N. Y. 508, 517) the court said: " When, therefore, an attorney has several actions, and recovers judgment in but one of them, he cannot, in the absence of a special agreement, have a lien upon that judgment for his compensation in all the actions."   (See, also, *Leask* v. *Hoagland*, 64 Misc. 156, 163; *Matter of Craig*, 171 App. Div. 218, 220.)

In the *Heinsheimer Case* (*supra*) Judge CARDOZO says: " This lien was not dependent on possession.  The very reason for its existence was to save the attorney's rights where he had been unable to get possession.  *  *  *  But the reason for the existence of this lien suggests the limitation of its scope.  It was not a lien for a general balance of account.  It was a lien for the value of the services rendered in that very action " (citing *Williams* v. *Ingersoll*, *supra; Adams* v. *Fox*, 40 Barb. 442, 445; *West* v. *Bacon*, 13 App. Div. 371; *Phillips* v. *Stagg*, 2 Edw. Ch. 108); and that (p. 368): " A charging lien cannot exist unless it is an element, express or implied, of the agreement that the lawyer is to be paid out of the fruits of the judgment; " and that " in case of lien, we should be anxious to tread cautiously, and on sure grounds, before we extend it beyond the limits of decided cases."   (Citing *Goodrich* v. *McDonald*, *supra*, 164.)   There is no suggestion in the moving papers that the petitioners expected to be paid " out of the fruits of the judgment; " on the contrary, it may be fairly inferred that they expected to look solely to the respondent, Menno A. Reeb, for pay for all the services rendered for him and the other said parties.

The only fund, created through the services of the petitioners, to which a lien might attach, is the $1,719.92 allowed to the respondent by the United States Board of Tax Appeals, but this fund may never be paid to respondent because the government has the option to pay it to respondent or give him credit for it. (Revenue Act of 1926, § 284-e.)*  This fund is not within the jurisdiction of this court, and there is no lien on money in the hands of the government.   (6 C. J. 778, § 385; also footnote 23.)

* 44 U. S. Stat. at Large, 67.— [REP.

No lien can arise where there is no fund to which it can attach. (6 C. J. 780, § 390; *Matter of Hasbrouck*, 153 App. Div. 394; *Matter of Ely*, 79 Misc. 118.)

The petitioners cannot assert a lien against the sums refunded to others than Menno A. Reeb because he alone was their client, and there can be no lien on the property of third persons (6 C. J. 778, § 385, and footnote 23; *Matter of Brackett*, 114 App. Div. 257; affd., 189 N. Y. 502; *Mooney* v. *Mooney*, 29 Misc. 707; *Matter of City of N. Y. [Fourteenth St.]*, 158 App. Div. 587); and there is no lien for the services of counsel employed by the attorney without consent of client. (6 C. J. 787, § 399.)

There is no direct proof as to the financial responsibility of the respondent, but it may be fairly inferred from the volume of his income and excess profits tax matters that he is financially able to pay any judgment that the petitioners may obtain against him in an action at law.

As the special function of the lien is to protect attorneys from financially irresponsible clients, a proceeding cannot be had under section 475 of the Judiciary Law simply to determine the amount due the attorneys from the client, because all the issues cannot be properly litigated in such proceeding; and also because there is no fund now within the jurisdiction of the court, belonging to the client, upon which the fee for all their services would be a lien.

Evidence as to the value of the services rendered by counsel and themselves for third parties would not be relevant in trying to establish their lien against the respondent because no lien can be established against said third parties, but evidence as to the value of all their services for all the parties would be clearly relevant in an action at law because they were retained by the respondent to perform said services for all the parties and he is bound to pay a reasonable charge therefor.

From a careful examination of many authorities, I am of the opinion that the petitioners are not entitled to have the amount of their compensation determined under the provisions of section 475 of the Judiciary Law, but must resort to an action at law. In arriving at this conclusion I am not overlooking the cases which hold that the statute is remedial and should be liberally construed (*Fischer-Hansen* v. *Bklyn. Heights R. R. Co.*, 173 N. Y. 492; *Cunningham* v. *Sizer Steel Corp.*, 1 F. [2d] 653; *Matter of Swartz, Inc.*, v. *City of Utica*, 223 App. Div. 506), but in all those cases the court unquestionably had jurisdiction of the judgment or fund against which lien was sought, and none are affected by services to third parties.

An order may be entered denying the motion of the petitioners

for an order to determine, under section 475 of the Judiciary Law, the amount of their compensation due for services rendered as attorneys for the respondent, Menno A. Reeb, but without costs and without prejudice to their right to enforce their claims by an action at law.