ANDREW F. CAPOCCIA et al., Appellants, v DOMINICK J. BROG-NANO, Respondent. (Action No. 1.)

ANDREW F. CAPOCCIA et al., Appellants, v DOMINICK J. BROG-NANO, Respondent. (Action No. 2.)

ANDREW F. CAPOCCIA, P. C., et al., Appellants, v THOMAS NICOTERA, Defendant, and DOMINICK J. BROGNANO, Re-spondent. (Action No. 3.)

Third Department, April 2, 1987

## APPEARANCES OF COUNSEL

*Andrew F. Capoccia,* appellant *pro se.*

*Couch & Howard, P. C. (Mark W. Couch* of counsel), for respondent.

## OPINION OF THE COURT

HARVEY, J.

These appeals present several issues raised in various lawsuits commenced by a formerly suspended attorney, plaintiff Andrew F. Capoccia,[1] who is attempting to collect fees purportedly due him. In early 1985, while facing suspension from the practice of law, plaintiff negotiated with defendant Dominick J. Brognano (hereinafter defendant) in an attempt to reach an agreement whereby defendant would take over plaintiff's cases. Although the specific details of the agreement were apparently never worked out nor was the agreement put into writing, plaintiff and defendant did allegedly reach an agreement and defendant became the attorney-of-record for many of plaintiff's clients. The relationship between the parties deteriorated and the lawsuits which are on appeal to this court, as well as numerous other suits, were commenced by plaintiff.

The underlying lawsuit in action No. 1 was commenced in October 1985 and is for compensatory and punitive damages for defendant's alleged conversion of money and breach of the oral agreement. Plaintiff sought to file an attorney's lien for each case in which he was involved prior to his suspension and for which defendant later became the attorney-of-record.

---

1. There are actually two plaintiffs. Andrew F. Capoccia and Andrew F. Capoccia, P. C. For purposes of these appeals, they will be considered as one and referred to as "plaintiff". We further note that, following a six-month suspension, plaintiff was readmitted to the practice of law in December 1985.

Plaintiff had filed 18 such petitions and threatened an additional 150 to 175 more. The petitions, which Supreme Court characterized as containing "irrelevant statements" and "highly inflammatory" allegations, were also served on many of defendant's former and present clients. Upon a motion by defendant, Supreme Court issued an order which, *inter alia,* "stayed and enjoined" plaintiff from continuing to file attorney's liens.

In action No. 2, which was commenced on January 7, 1986, plaintiff sought to recover disbursements incurred by him prior to his suspension. In that action, Supreme Court required that a Referee be present during the taking of depositions. Plaintiff claims this was an abuse of discretion.

Plaintiff commenced action No. 3 on January 13, 1986 seeking payment for property allegedly used and converted by defendant.[2] Plaintiff alleges errors by Supreme Court in requiring him to respond in that case to a demand for a bill of particulars.

We consider first whether Supreme Court erred in action No. 1 in enjoining plaintiff from filing petitions for attorney's liens in every action in which defendant had served as attorney-of-record for a prior client of plaintiff's. At common law, an attorney had a charging lien for services rendered in procuring a judgment or award for his client *(Matter of Heinsheimer,* 214 NY 361, 364-365; *Fischer-Hansen v Brooklyn Hgts. R. R. Co.,* 173 NY 492; *Goodrich v McDonald,* 112 NY 157, 163; *Matter of Albrecht,* 132 Misc 713, *affd* 225 App Div 423, *affd* 253 NY 537; 7 NY Jur 2d, Attorneys at Law, § 175, at 97). Judiciary Law § 475 codified the charging lien and enlarged it to the extent that it attaches to a cause of action before a judgment is entered *(Matter of Heinsheimer, supra,* at 365; *Kaplan v Reuss,* 113 AD2d 184, 186, *affd* 68 NY2d 693). The purpose of the lien is to protect attorneys from being unfairly deprived of their fees by the "knavery" of their clients *(Matter of City of New York [United States of Am.—Coblentz],* 5 NY2d 300, 307; *Goodrich v McDonald, supra,* at 163; *Kaplan v Reuss, supra,* at 186). A charging lien is available only to the attorney-of-record *(Rodriguez v City of New York,* 66 NY2d 825, 827; *Matter of Barnum v Srogi,* 96 AD2d 723) and may be lost if the attorney withdraws or is discharged for misconduct *(People v Keefe,* 50 NY2d 149, 156),

---

2. Another individual, Thomas Nicotera, is also named as a defendant in action No. 3. He is not, however, involved in the appeal of this action.

leaving the attorney a plenary action *(Kaplan v Reuss, supra,* at 187). Indeed, prior to the enactment of court rules such as 22 NYCRR 806.9 (b), there was a split of authority in this State as to whether a disbarred or suspended attorney had a right to compensation for his services provided before his disbarment or suspension *(see generally,* Annotation, *Attorney's Right To Compensation as Affected By Disbarment or Suspension Before Complete Performance,* 24 ALR3d 1193, § 5). Although a suspended attorney may now be able to collect the reasonable value of services rendered prior to his suspension, this does not necessarily mean that he has a lien on any funds obtained by another attorney representing his clients after his suspension. The right to compensation and the right to have a lien are not synonymous *(see, Fischer-Hansen v Brooklyn Hgts. R. R. Co., supra,* at 496).

■ Here, plaintiff, faced with suspension from the practice of law, terminated his relationship as attorney-of-record with his clients and those responsibilities were assumed by defendant. Plaintiff's withdrawal from the cases was not made under the type of circumstances that the charging lien was intended to protect. Plaintiff's dispute is not with his former clients but with defendant, as the attorney who represented those clients after plaintiff's suspension. We hold that under these circumstances plaintiff does not have a charging lien on his former clients' cases.

■ Plaintiff further contends that Supreme Court's order in action No. 1 is defective since no undertaking was given by defendant as required by CPLR 6312 (b) when a preliminary injunction is granted *(see, Times Sq. Stores Corp. v Bernice Realty Co.,* 107 AD2d 677, 681). The relief granted by the court, however, was in the nature of a stay. Pursuant to CPLR 2201 "the court in which an action is pending may grant a stay of proceedings in a proper case, upon such terms as may be just". Supreme Court found that the continuous flow of petitions being served by plaintiff upon defendants' clients contained "many irrelevant statements which accuse defendant of criminal activity. Said accusations, beyond being irrelevant, were (and are) highly inflammatory, and would tend to harm defendant in his representation of his clients". The court further noted that adequate security was provided for plaintiff's claims by the fact that 50% of defendant's fees were being placed in escrow pursuant to another court order. Given these circumstances and the fact that adequate security is

being provided, we find no abuse of discretion in the court's decision.

■ Further, Supreme Court's order in action No. 1 does not violate plaintiff's rights under 22 NYCRR 806.9 (b). As was discussed above, plaintiff may proceed with his alleged plenary action against defendant. The fact that 22 NYCRR 806.9 (b) requires notice to the clients does not justify the type of "inflammatory" notice provided by plaintiff. 22 NYCRR 806.9 (b) does not prescribe the type of notice to be given and we hold that it was appropriate for the court to order the notice it deemed sufficient under the circumstances. In a case such as the one at bar where the dispute is between two attorneys, and not an attorney and a client, a much less accusatory form of notice than was provided by plaintiff would certainly be more appropriate. Particularly since the primary concern of the clients is not who receives the fees, but to insure that they are not overcharged as a result of the fact that two feuding attorneys worked on their cases.

■ In action No. 2, plaintiff simultaneously served four notices to take a deposition upon defendant. Defendant notified plaintiff that he objected to plaintiff's disclosure attempts and refused to attend the deposition. Plaintiff moved for an order directing defendant to appear. Supreme Court denied the motion and ordered that any depositions in the litigation between the parties be taken with a Referee present. The court declined to appoint a Referee because disclosure had been stayed in these actions by a prior court order. Plaintiff argues that it was an abuse of discretion and a denial of due process for Supreme Court to refuse to compel defendant to submit to the depositions. We disagree.

The scope and supervision of discovery is generally a matter within the sound discretion of the court where the action is pending (*Nitz v Prudential-Bache Sec.,* 102 AD2d 914; *see, Richards v Pathmark Food Store,* 112 AD2d 360). It is within the court's authority and discretion to require, in appropriate circumstances, a Referee to preside at a deposition (CPLR 3104 [a]; *Lee v Lee,* 93 AD2d 221, 227). A case wherein a party who is proceeding *pro se* and his opponent's counsel are unable to cooperate can sometimes best be dealt with by the appointment of a Referee *(see, Kamp v Schier,* 75 AD2d 638). Such is the case here. Indeed, we note that to accept plaintiff's argument that there is no more hostility or lack of cooperation in this case than in any other typical lawsuit would require this court to ignore the record and disregard the

observations of Supreme Court which had the opportunity to view the parties. To the extent plaintiff complains of the failure of the court to appoint a Referee, the court's decision was consistent with a prior order staying disclosure. That prior order is not before this court on appeal.

■ In the appeal from action No. 3, plaintiff asserts that Supreme Court committed reversible error when it redrafted one of defendant's demands. The issue came before the court upon defendant's motion for an order compelling plaintiff to respond to previously served demands for a bill of particulars. Plaintiff had failed to object to defendant's demand within 10 days as required by CPLR 3042 (a) and thus waived all but palpably improper requests (3 Weinstein-Korn-Miller, NY Civ Prac ¶ 3042.04). Supreme Court, instead of ordering plaintiff to furnish a bill as demanded as it could have *(see, Pratt & Sons v Kingsley Drilling & Blasting,* 52 AD2d 997), redrafted one of the demands in an apparent attempt to expedite the litigation between these parties which has been characterized by continuous dilatory and harassing tactics. Under these conditions, we conclude that Supreme Court's action was not an abuse of discretion.

MAHONEY, P. J., MAIN, CASEY and MIKOLL, JJ., concur.

Orders affirmed, with costs.