Petition of HARLEY & BROWNE, attorneys and counselors at law of the State of New York, for an Adjudication of said Attorneys' rights in the Matter of Hake v. United States of America.

HARLEY & BROWNE, Petitioner,

v.

RESSLER & RESSLER, Rachel Hake and Terry Hake, and United States of America, Respondents.

No. 88 Civ. 3559 (DNE).

United States District Court, S.D. New York.

March 4, 1997.

Harley & Browne, New York City (J. Austin Brown, of counsel), pro se, for petitioner.

Ressler & Ressler, New York City (Richard F. Bernstein, of counsel), for respondents Ressler & Ressler, Rachel Hake and Terry Hake.

Mary Jo White, United States Attorney for the Southern District of New York, New York City (Lisa A. Jonas, Assistant United States Attorney, of counsel), for respondent U.S.

*Opinion & Order*

EDELSTEIN, District Judge:

Presently before this Court is a petition for attorneys' fees brought by Harley & Browne ("petitioner" or "HB"). This petition is opposed by respondents Ressler & Ressler

("RR"), Rachel Hake and Terry Hake (the "Hakes"), and the United States of America (the "Government") ("respondents"). For the following reasons, the petition is denied.

## BACKGROUND

The action underlying this petition, *Hake v. United States*, 88 Civ. 3559(DNE), was a medical malpractice action brought under the Federal Tort Claims Act. That action sought damages for a botched surgical procedure performed at the United States Army Hospital at West Point. This surgical procedure severed Rachel Hake's rectal muscles, rendering her incontinent. In January 1988, HB, a New York law firm, was retained by the Hakes to represent them in their malpractice lawsuit. According to its retainer agreement with the Hakes, HB was to receive "an amount equal to 25% of the net sum recovered" in the malpractice action. (Pet.¶ 5.)

According to the Hakes and RR, another New York law firm which was later substituted for HB as the Hakes' counsel, "[a]fter doing nothing for two years, [HB] assigned the case to an attorney who was unfamiliar with medical terminology, and was unable to locate an expert to review the case—even though [Rachel] Hake gave [the attorney] the names of doctors with firsthand knowledge of her injury." (RR Memo at 2.) The Hakes and RR further contend that the HB attorney "told Hake that the case was about to be dismissed because she could not locate an expert, and that she feared that the [Hakes and the attorney] would be sanctioned for bringing a 'frivolous' lawsuit." *Id.* In August 1989, the Hakes discharged HB and retained RR to represent them in their malpractice action.

In 1992, HB attempted to secure an "attorneys' lien" against 25% of any recovery by the Hakes in their malpractice action pursuant to New York Judicial Law, Section 475. HB contends that it "served several notices of their attorneys' lien upon both the United States of America and [RR]. On or about May 11, 1992, [HB] filed the Affidavit of Service of the Notice of Attorneys' Lien with the Clerk of the United States District Court for the Southern District of New York." *Id.* ¶ 10.

After protracted pre-trial and discovery processes, the Hakes' malpractice action ultimately settled in 1993 for $500,000, payable by the Government. (Stipulation and Order of Dismissal, *Hake v. United States,* 88 Civ. 3559 (Sept. 15, 1993).) On January 4, 1994, before that sum was paid, Lisa A. Jonas, Assistant United States Attorney for the Southern District of New York ("AUSA Jonas"), sent a letter to J. Austin Browne ("Browne") of HB, "informing him that the Government had entered into a settlement of the [Hakes'] malpractice action." (Govt. Memo at 1.) Jonas' letter further stated that although the Government had received an August 15, 1989, notice of attorneys' lien from HB, it was the Government's position that the lien was not valid because it was "not executed or notarized and has no indicia that it has been perfected." *Id.*; (Notice of Motion at Exh. 2.) The letter further requested any evidence from HB supporting HB's claim that it possessed a valid lien, and advised HB to contact the Government within ten days or the settlement proceeds would be released to the Hakes. (Govt. Memo at 1.) The letter was mailed to HB at the address on the lien. *Id.* On January 10, 1994, the letter was returned to the Government marked "return to sender, forwarding order expired." *Id.* at 2. On January 18, 1994, the Government released the settlement proceeds to the Hakes. *Id.* On February 10, 1994, AUSA Jonas received a telephone call from Browne inquiring about the settlement. *Id.* AUSA Jonas informed Browne that the Government had released the settlement payment to the Hakes because HB's lien was invalid and the Government was unable to contact HB by mail. *Id.* AUSA Jonas sent by facsimile to Browne a copy of both her January 4, 1994, letter and the envelope in which it was returned to her. *Id.*

None of the respondents heard from HB again for approximately sixteen months. At that time, in May 1995, HB brought a petition against RR—not the Hakes or the Government—in the New York County Supreme Court. (RR Memo at 3); (RR Notice of Motion at Exh. D.) In that petition, HB

sought the identical relief for which it now petitions this Court. *Id.* On December 6, 1995, the state court "decline[d] to accept jurisdiction over" the petition, because "[t]he res was already under the jurisdiction of the [f]ederal court," and it "appear[ed] that [HB] raised the issue of attorneys' fees in the federal action, were invited to submit proof, and either failed to or were unable to comply." (RR Notice of Motion at Exh. D.)

HB again waited a substantial period of time before seeking to enforce its lien. The Government—which was not named in HB's state court action—maintains that after releasing the settlement payment, it "did not hear from [HB] again for more than two and one-half years, until October 28, 1996, when [HB] served the Government with the petition at issue in this action." (Govt. Memo at 2.) Similarly, RR explains that, "[a]fter waiting nearly a year after the state court dismissed [its] petition, [HB] filed the current petition for the same relief that the state court denied." (RR Memo at 3.)

The instant petition was filed on October 28, 1996. On November 18, 1996, and December 3, 1996, RR and the Government, respectively, filed their opposition to HB's petition. On November 27, 1996, the docket sheet indicates that HB filed a submission responsive to RR and the Government's opposition. In direct contravention of this Court's Individual Rules, however, this Court was never provided with a courtesy copy of that submission. *See* (Honorable David N. Edelstein: Individual Rules, Procedures and Forms, at 3 (2d ed.1992).) Because this court finds that HB's failure to provide this Court with courtesy copies of its submission in response to RR and the Government's opposition, this Court will disregard that submission.

## DISCUSSION

There are two primary issues to be resolved in this Opinion: (1) whether this Court possesses the jurisdiction to consider HB's petition; and (2) if so, whether to grant HB's petition. This Court will consider these issues separately.

## I. ANCILLARY JURISDICTION

As an initial matter, this Court notes that it is proper for this Court to exercise jurisdiction over HB's claim for attorneys' fees. Under the doctrine of ancillary jurisdiction, a federal court may exercise jurisdiction over a claim for which no subject matter independently obtains "if the claim is sufficiently related to an initial claim properly before the court." *Chesley v. Union Carbide Corp.*, 927 F.2d 60, 64 (2d Cir.1991) (citing *Baylis v. Marriott Corp.*, 843 F.2d 658, 663 (2d Cir.1988)). The decision to entertain an ancillary claim is discretionary, and turns upon "whether the policies of 'judicial economy, convenience, and fairness to litigants' are furthered by the assumption of jurisdiction.'" *Id.* (quoting *Stamford Bd. of Educ. v. Stamford Educ. Ass'n*, 697 F.2d 70, 72 (2d Cir.1982)); *see also United Mine Workers v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966). Moreover, "[i]t is well-settled that '[a] federal court may, in its discretion, exercise ancillary jurisdiction to hear fee disputes . . . when the dispute relates to the main action. . . . '" *Chesley*, 927 F.2d at 64 (quoting *Cluett, Peabody & Co. v. CPC Acquisition Co.*, 863 F.2d 251, 256 (2d Cir.1988)); *see also Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 395, 110 S.Ct. 2447, 2455–56, 110 L.Ed.2d 359 (1990); *Petition of Rosenman Colin Freund Lewis & Cohen*, 600 F.Supp. 527, 531 (S.D.N.Y.1984). This rule holds true even in cases, such as that at bar, where the main action has been disposed of through settlement. *See, e.g., Cluett, Peabody*, 863 F.2d at 253; *Schmidt v. Zazzara*, 544 F.2d 412, 413–14 (9th Cir.1976).

In light of this overwhelming authority, this Court finds that it may, in its discretion, exercise jurisdiction over the instant petition. Moreover, because this Court is familiar with the facts underlying this litigation, and because a state court already has declined to adjudicate HB's petition, this Court finds that judicial economy and the interests of the parties in an expeditious disposition of this matter are best served by this Court's exercise of ancillary jurisdiction over HB's petition to enforce its attorney's lien.

**48**

## II. HB'S PETITION

 HB petitions this Court to enforce its attorneys' lien pursuant to New York Judicial Law, Section 475 ("Section 475"). Section 475 provides:

> From the commencement of an action, special or other proceeding in any court or before any state, municipal or federal department of labor, or the service of answer containing a counterclaim, the attorney who appears before a party has a lien upon his client's cause of action, claim or counterclaim, which attaches to a verdict, report, determination, decision, judgment, or final order in his client's favor, and the proceeds thereof in whatever hands they may come; and the lien cannot be affected by any settlement between the parties before or after judgment, final order or determination. The court upon the petition of the client or attorney may determine and enforce the lien.

N.Y. Jud. Law § 475 (McKinney's 1983). At common law, an attorney possessed a "charging lien" for services rendered in procuring an award or judgment for his client. *See Capoccia v. Brognano*, 513 N.Y.S.2d 863, 865, 126 A.D.2d 323 (N.Y.App.Div.1987) (citations omitted). The charging lien "was originally developed by the courts to ensure that attorneys were not deprived unfairly of their fees when the services they rendered in litigation produced proceeds for their clients." *Kaplan v. Reuss*, 495 N.Y.S.2d 404, 405, 113 A.D.2d 184 (N.Y.App.Div.1985), *aff'd*, 68 N.Y.2d 693, 506 N.Y.S.2d 304, 497 N.E.2d 671 (N.Y.1986). Section 475 "codified the charging lien and enlarged it to the extent that it attaches to a cause of action before a judgment is entered." *Id.; In re Heinsheimer* 214 N.Y. 361, 365, 108 N.E. 636 (N.Y.1915). These liens are available only to an "attorney of record," *Rodriguez v. City of New York*, 66 N.Y.2d 825, 827, 498 N.Y.S.2d 351, 489 N.E.2d 238 (N.Y.1985), although "an attorney's participation in the proceedings *at one point* as counsel of record is a sufficient predicate for invoking [Section 475's] protection." *Klein v. Eubank*, 87 N.Y.2d 459, 462, 640 N.Y.S.2d 443, 444, 663 N.E.2d 599 (N.Y. 1996) (emphasis in original). As a result, an attorney need not be counsel of record at the time a plaintiff receives judgment or settlement proceeds in order to have a lien on those proceeds, so long as the attorney was counsel of record at one point in the proceedings. *See id.* Moreover, "[t]he lien comes into existence, without notice or filing, upon commencement of the action or proceeding." *LMWT Realty Corp. v. Davis Agency Inc.*, 85 N.Y.2d 462, 467, 626 N.Y.S.2d 39, 42, 649 N.E.2d 1183, 1186 (N.Y.1995).

In the case at bar, it is undisputed that, before being substituted by RR, HB was the Hakes' attorney of record in their medical malpractice action. As a result, this Court finds that HB did, in fact attach a lien to the Hakes' $500,000 settlement proceeds. However, this Court finds that HB's attempt to enforce that lien in the instant petition against RR, the Hakes, and the Government must fail. This Court will first discuss the reasons for that failure with respect to RR and the Hakes, and then it will consider the petition's failure as to the Government.

### A. RR & The Hakes

For two independently sufficient reasons, this Court finds that HB has forfeited its ability to enforce its lien against RR and the Hakes. First, the unrefuted evidence that HB was discharged as counsel of record "for cause" negates their lien on the Hakes' settlement proceeds. Second, HB's undue delay in seeking to enforce the lien bars them from doing so. This Court will discuss these reasons individually.

#### 1. Substitution of Counsel "For Cause"

 It is well-settled that an attorney loses his right to enforce a charging lien if the attorney withdraws or is discharged for cause. *See Capoccia*, 513 N.Y.S.2d at 865, 126 A.D.2d 323; *People v. Keeffe*, 50 N.Y.2d 149, 156, 428 N.Y.S.2d 446, 405 N.E.2d 1012 (N.Y.1980) ("[a]n attorney's charging lien may be lost if he ... is discharged for misconduct"); *cf. Klein*, 87 N.Y.2d at 462, 640 N.Y.S.2d at 444, 663 N.E.2d at 600 (attorneys who voluntarily withdraw as counsel of record "for just cause continue to be entitled to enforce their liens" (emphasis omitted)).

 In the instant case, RR documents the reasons justifying the Hakes' dismissal of

HB as its counsel of record "for cause." RR explains that, after HB was retained as the Hakes' attorneys, RR did "nothing for two years" despite "many inquiries" by Rachel Hake. (RR Aff. ¶ 4); (R. Hake Aff. ¶ 6.) In addition, HB "assigned the case to an attorney who was unfamiliar with medical technology" and who was unable to locate a medical expert to review the Hakes' case, despite Rachel Hake's giving the attorney the names of doctors familiar with her condition. (RR Aff. ¶ 4); (R. Hake Aff. ¶ 8.) In addition, HB informed the Hakes that their malpractice action was "frivolous" and that they risked sanctions for pursuing it. (R. Hake Aff. ¶ 8.)

■ This Court has received nothing from HB challenging this evidence. As noted above, HB's response to RR and the Government's opposition to the instant petition violated this Court's Individual Rules, and therefore cannot properly be considered. Moreover, this Court has reviewed the docket sheet and original files maintained by the Clerk of the Court of the Southern District of New York, and has found that HB submitted no evidence with its response brief which rebuts—or even addresses—RR and the Hakes' evidence that HB was dismissed for cause. In light of the unchallenged evidence that HB was dismissed as the Hakes' attorney for cause, this Court finds that HB may not enforce its charging lien against the Hakes' settlement proceeds.

### 2. Delay

■ "[T]he right to enforce ... a [Section 475] lien will be waived by any action inconsistent with an intent to enforce the lien." *Kaplan*, 495 N.Y.S.2d at 407, 113 A.D.2d 184 (citation omitted). This "waiver rule is intended to prevent other parties from being misled by an attorney's actions or inaction." *Id.* Therefore, "if [an] attorney fails to enforce the lien within a reasonable time, the lien will be deemed waived and the attorney relegated to a plenary action against the client for any fees." *Id.* (internal citation omitted).

■ In the case at bar, the settlement proceeds were transmitted from the Government to the Hakes on January 18, 1994. At the latest, HB had knowledge of the settlement payment on February 10, 1994, when Browne telephoned AUSA Jonas to inquire about the settlement, and was informed that the proceeds already had been released. HB did not seek to enforce its lien against RR until May 1995—sixteen months after the funds were paid—in the New York state court action. That action was dismissed on December 6, 1995. HB was not heard from again until October 28, 1996—nearly eleven months after the state court dismissal—when it filed the instant petition. This Court finds that the combined twenty-seven months that HB delayed, without explanation, in seeking to enforce its lien, renders enforcement improper now. Such delay clearly constitutes "action inconsistent with an intent to enforce the lien," which is likely to mislead the other parties. *Kaplan*, 495 N.Y.S.2d at 407, 113 A.D.2d 184. As a result, this Court finds that HB has waived its ability to enforce its lien against HB.

### B. The Government

■ This Court finds that HB's attempt to enforce its lien against the Government should be denied for three reasons. The first is for one of the reasons discussed above—specifically, that HB's inexplicable and lengthy delay has rendered its lien unenforceable. *See Kaplan*, 495 N.Y.S.2d at 407, 113 A.D.2d 184. Second, this Court finds that HB's claim against the Government is barred by sovereign immunity. As the Government correctly argues, waivers of sovereign immunity must be clearly expressed and strictly construed. *Ruckelshaus v. Sierra Club*, 463 U.S. 680, 685–86, 103 S.Ct. 3274, 3277–79, 77 L.Ed.2d 938 (1983); *United States v. Nordic Village, Inc.*, 503 U.S. 30, 33–34, 112 S.Ct. 1011, 1014–15, 117 L.Ed.2d 181 (1992). Because the medical malpractice action underlying HB's petition was brought under the Federal Tort Claims Act, the United States waived it sovereign immunity with respect to that action. 28 U.S.C. § 2674 (the "United States shall be liable ... to tort claims in the same manner and to the same extent as a private individual under like circumstances"). By bringing the instant petition twenty-seven months after the main case was settled and a stipulated order of dismiss-

al entered, however, HB effectively instituted a new, independent cause of action for attorneys' fees. The Government has not expressed its consent to be sued for attorneys' fees, and this Court is unwilling to construe its prior waiver of sovereign immunity so broadly as to permit this petition to proceed against the Government. *See United States v. Guaranty Trust Co. of New York*, 60 F.Supp. 103, 104–05 (S.D.N.Y.1945) (Judge Rifkind denied a Section 475 petition against the United States and Soviet Russia, relying in part upon sovereign immunity).

The third reason this Court finds that HB's petition against the Government should be denied is that, in the underlying action the Government was the defendant and, as a result, the payor, not the recipient, of the settlement proceeds. An attorney may enforce a charging lien against a defendant who already paid the proceeds to which the lien is attached where the defendant "knowingly paid the proceeds to the client so as to deprive the attorney of an earned fee." *Kaplan*, 495 N.Y.S.2d at 406, 113 A.D.2d at 184. Here, however, the Government did not pay the settlement proceeds to the Hakes in order to deprive HB of a fee for its representation of the Hakes. On the contrary, AUSA Jonas made every effort to notify HB of the impending settlement payment, but was unable to do so because HB had moved its offices without informing the Government. As a result, this Court finds that the Government did not release the settlement proceeds in order to deprive HB of a fee, and thus, HB may not enforce its lien against the Government.

*CONCLUSION*

IT IS HEREBY ORDERED THAT Harley & Browne's petition is DENIED.

SO ORDERED.