Ariel ANTONMARCHI, Plaintiff,

v.

CONSOLIDATED EDISON COMPANY
OF NEW YORK, Defendant.

No. 03 Civ. 7735(LTS)(KNF).

United States District Court,
S.D. New York.

Jan. 13, 2010.

Neil Michael. Frank, Peter A. Romero, Frank & Associates, P.C., Farmingdale, NY, Vincent Edward Bauer, Law Offices of Vincent E. Bauer, New York, NY, for Plaintiff.

David J. Reilly, Con Edison Law Department, Mary Schuette, Consolidated Edison Company, New York, NY, Amanda Dealy Haverstick, Proskauer Rose LLP, Newark, NJ, for Defendant.

## MEMORANDUM and ORDER

KEVIN NATHANIEL FOX, United States Magistrate Judge.

### I. INTRODUCTION

Ariel Antonmarchi ("Antonmarchi") brings this action against his former employer, Consolidated Edison Company of New York, Inc. ("Con Edison"), alleging violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 1981, the New York State and City Human Rights Laws, and New York's Whistle–Blower Law. Before the Court are: (1) Antonmarchi's

"motion to dismiss" his attorneys, Neil M. Frank ("Frank") and Peter A. Romero ("Romero"), of the law firm Frank & Associates, P.C. ("F & A"); and (2) F & A's cross-motion (a) to withdraw as counsel, pursuant to Local Civil Rule 1.4 of the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York ("Local Civil Rule 1.4"), and (b) for the Court to fix a charging lien, pursuant to New York Judiciary Law § 475 ("NYJL § 475").

## II. BACKGROUND

Antonmarchi initiated this action, *pro se*, against Con Edison on October 1, 2003. Shortly thereafter, he retained Vincent E. Bauer, Esq. ("Bauer") as his attorney. In a letter, dated March 15, 2005, Bauer wrote, to the Court, of the "significant difficulties" he faced working with Antonmarchi, which "culminat[ed] in a heated exchange" in Bauer's office. At a conference, before the Court, to address the difficulties, Antonmarchi accused Bauer of fraternizing with Con Edison employees and altering documents, while Bauer contended, for ethical reasons, he could not allow Antonmarchi to testify at trial. On March 21, 2005, the Court granted Bauer's application, pursuant to Local Civil Rule 1.4, to be relieved of the obligation to continue representing the plaintiff in this action.

In late May 2005, Antonmarchi retained F & A as his counsel. Thereafter, the Court, upon the plaintiff's motion, twice enlarged the time permitted for the completion of discovery. Con Edison filed a motion for summary judgment on November 10, 2005, which the plaintiff opposed. On September 29, 2008, the assigned district judge granted, in part, and denied, in part, the defendant's motion for summary judgment. After learning about the decision on summary judgment, Antonmarchi left a voicemail message for Frank, describing what F & A had "done to" Antonmarchi and his friend, Edward Cunningham ("Cunningham"), an "atrocity." Like Antonmarchi, Cunningham retained F & A in an action against Con Edison; however, Cunningham's case concluded with a grant of summary judgment in favor of Con Edison. In submissions to the Court, Antonmarchi explains that he believes F & A conspired with Con Edison to "lessen" his damages, as evidenced by the assigned district judge's partial grant of summary judgment in favor of the defendant. Antonmarchi contends the grant of summary judgment in Cunningham's case is further evidence that F & A is "in cahoots" with the defendant.

In his voicemail message to Frank, Antonmarchi warned Frank to prepare for a "legal battle" because Antonmarchi intended to "drag [Frank] through the papers, . . . the media, [and] . . . the whole court system."[1] Romero contends Antonmarchi left him a similar voicemail message, telling Romero he would not "be a lawyer" by the year's end because of the outcomes in his and Cunningham's cases.

In a letter, dated October 10, 2008, Frank advised Antonmarchi that, in light of Antonmarchi's voicemail messages, it would be best for him to retain new counsel to pursue his action. Frank requested that the plaintiff have his new counsel send a substitution of counsel form for Frank's signature or F & A would simply "file a motion with the Court to be relieved."

On October 17, 2008, Antonmarchi filed his "motion to dismiss" his attorneys. Ac-

---

1. F & A has submitted, to the Court, the cassette tape on which Antonmarchi recorded his message to Frank. The recording is dated October 8, 2008. F & A did not preserve any of the other voicemail messages alleged to have been left by Antonmarchi.

cording to Antonmarchi,[2] his attorneys should be dismissed for, *inter alia,* the following: (1) telling Antonmarchi that their firm had not represented corporations in the past, when it had; (2) requesting, from the Court, two extensions of the time to complete discovery; (3) failing to have Antonmarchi evaluated by a psychiatrist, other than the one provided by Con Edison; (4) sending a letter to the assigned district judge requesting a decision on the defendant's summary judgment motion; (5) filing a motion for leave to file a second amended complaint, after a summary judgment motion had been made; and, most importantly[3], (6) failing to submit, in the memorandum of law in opposition to the summary judgment motion, information the plaintiff deems relevant to his case. On the final grievance, Antonmarchi contends that, "if Frank & Associates would have presented all the evidence in [his] case such as [his] medical reports, psychiatric reports, all depositions, ... and affidavits from [his] witnesses," the assigned district judge would not have partially granted summary judgment in favor of Con Edison. According to Antonmarchi, his attorneys did not present the aforementioned evidence intentionally, in order to sabotage his case.

On November 6, 2008, the Court received, from the plaintiff's counsel, a cross-motion, requesting that: (1) counsel be relieved of the obligation of continuing to represent the plaintiff in this action, pursuant to Local Civil Rule 1.4; and (2) the Court fix a lien in this action for recovery of attorney's fees.

In response to Antonmarchi's allegations of misconduct, F & A contends the following[4]: (1) it never informed the plaintiff that the firm did not represent corporations, only that it had not previously represented Con Edison, which it has not; (2) it requested enlargements of the time to complete discovery because it was retained "on the eve of the close of discovery," and "very little discovery" had been done previously; (3) another psychiatric evaluation of Antonmarchi would not have added value to his case; (4) Antonmarchi agreed to have the firm send its "very respectful letter" to the assigned district judge, requesting a decision be made on the defendant's summary judgement motion; (5) it "went to great lengths to try to correct" the plaintiff's "deficient" amended complaint, which the plaintiff's former counsel drafted; and (6) it exercised its "legal judgment" by not including, in the plaintiff's brief opposing summary judgment, some of the materials Antonmarchi claims should have been included. For example, the firm "did not submit copies [of] Plaintiff's psychiatric records in opposition to Defendant's motion for summary judgment, because the records have no bearing on the issue of Defendant's liability[.]" According to Romero, F & A "vigorously opposed" the defendant's summary judgment motion, but nevertheless, seeks to withdraw as counsel in the instant action because its attorneys are concerned by

**2.** This summation of Antonmarchi's grievances is taken from his numerous submissions to the Court, between October 17, 2008 and August 10, 2009, as well as his statements before the Court on April 23, 2009, when the Court heard oral arguments on the motion and cross-motion.

**3.** At the April 23, 2009 proceeding, Antonmarchi admitted that the assigned district judge's decision on the summary judgment

motion had "[a] lot" to do with his decision to file a motion to terminate his relationship with F & A.

**4.** This summation of F & A's position is compiled from its motion and reply papers, statements before the Court at the April 23, 2009 proceeding, and a supplemental submission, dated May 7, 2009.

Antonmarchi's "erratic and volatile behavior" and fear the plaintiff "might become violent."

In its cross-motion, F & A also requested that the Court determine and enforce a lien upon the plaintiff's action, pursuant to NYJL § 475. According to Romero, F & A agreed to represent Antonmarchi on a contingency fee basis and "has already advanced more than $4,000 in expenses" on the case. Romero contends his firm is "entitled to a charging lien" because it has "shown just cause for leave to withdraw." F & A moves to have the amount of the lien "determined on a quantum meruit basis," but contends it is premature to calculate that amount; rather, it requests that the Court compute the amount at the conclusion of Antonmarchi's case.

## III. DISCUSSION

### A. "Motion to Dismiss" Attorneys

The district courts in this circuit "liberally construe pleadings and briefs submitted by *pro se* litigants, . . . reading such submissions 'to raise the strongest arguments they suggest[.]' " *Bertin v. United States*, 478 F.3d 489, 491 (2d Cir.2007) (internal citations omitted). As such, the Court reads Antonmarchi's "motion to dismiss" his attorneys as a motion to proceed *pro se*.[5]

■ "[T]he right to self-representation in civil cases . . . is a right of high standing," but it is not without limit. *O'Reilly v. New York Times Co.*, 692 F.2d 863, 867 (2d Cir.1982). As provided for by statute, "parties may plead and conduct their own

cases personally or by counsel as, by the rules of such courts, respectively, are permitted to manage and conduct causes therein." *See* 28 U.S.C. § 1654; *see also* Local Civil Rule 1.4. The Second Circuit Court of Appeals has placed a "few qualifications . . . on the clear language of" 28 U.S.C. § 1654. *O'Reilly*, 692 F.2d at 867. First, the right must be asserted timely. *See id.* Second, the party asserting the right "must clearly and unequivocally discharge any lawyer previously retained." *Id.* at 868. Third, "[a] person must be litigating an interest personal to him." *Iannaccone v. Law*, 142 F.3d 553, 558 (2d Cir.1998).

■ The Second Circuit has noted, with respect to timeliness, that "preferably" a litigant will move to proceed *pro se* prior to the commencement of trial. *See id.; see also O'Reilly*, 692 F.2d at 868 (finding a plaintiff's motion to proceed *pro se* to be timely, though filed after a notice of motion for summary judgment). However, courts in this district have granted such motions even after the conclusion of trial. *See, e.g., Jolly v. Coughlin*, No. 92 Civ. 9026, 1999 WL 20895, at *14 (S.D.N.Y. Jan. 19, 1999) (granting a plaintiff's request to have a law firm "relieved as his counsel and to proceed *pro se* " on appeal from judgment). In the instant case, Antonmarchi's application to proceed *pro se* is timely in that it has been made before trial. *See generally O'Reilly*, 692 F.2d at 870 ("[A] party's right to discharge counsel prior to trial and represent himself does not require any showing of inadequacy.").

---

**5.** At the April 23, 2009 proceeding, Antonmarchi indicated that, if his motion were granted, he would "like to see if [he] could get" court-appointed counsel to represent him. Should he be unable to secure such representation, Antonmarchi explained he would "[m]ost likely [ ] engage counsel." However, Antonmarchi made the instant motion as a *pro se* litigant, and, to date, no attorney has moved to be substituted as counsel, in place of F & A, which suggests Antonmarchi has not yet retained new counsel. Hence, the practical effect of granting Antonmarchi's motion would be to permit him to continue prosecuting his case *pro se*.

■ The second qualification on the right to self-representation prevents a party from "enjoy[ing] both halves of the statutory right"—the right to proceed *pro se* or with counsel. *See id.* at 868. Thus, a court entertaining a motion to proceed *pro se* must ensure the movant is not actually seeking so-called " 'hybrid representation.' " *See id.* (citation omitted). Antonmarchi has expressed great antipathy for his attorneys and has already filed, on his own, a motion for reconsideration of the order granting, in part, the defendant's summary judgment motion, and a reply brief in connection with that motion for reconsideration. The Court is persuaded that Antonmarchi is not seeking to straddle the line between self-representation and representation by counsel.

As to the third qualification, "the threshold question becomes whether a given matter is plaintiff's own case or one that belongs to another." *Iannaccone,* 142 F.3d at 558. Insofar as this qualification pertains to cases involving representation of corporations or minors, *see id.,* it does not apply to Antonmarchi's case.

Since none of the qualifications on the statutory right to self-representation apply to Antonmarchi, his motion to discharge his counsel and appear *pro se* is granted.

## B. Cross–Motion to Withdraw as Attorneys of Record

Insofar as granting Antonmarchi's motion relieves F & A of its obligation to represent the plaintiff in the instant action, F & A's motion to withdraw as counsel, pursuant to Local Civil Rule 1.4, is denied as moot.

## C. Cross–Motion for Charging Lien

■ Although a federal court's "jurisdiction to hear fee disputes and lien claims between litigants and their attorneys" is ancillary, *Marrero v. Christiano,* 575 F.Supp. 837, 839 (S.D.N.Y.1983), the Second Circuit has held that "the discretion to decline supplemental jurisdiction is available only if founded upon an enumerated category of" 28 U.S.C. § 1367(c)(1)-(4).[6] *Itar–Tass Russian News Agency v. Russian Kurier,* 140 F.3d 442, 448 (2d Cir. 1998). None of the categories applies in the instant case; therefore, the Court will exercise its supplemental jurisdiction authority, pursuant to 28 U.S.C. § 1367(a), and determine whether to fix a charging lien. "[T]he lien created by [NYJL § ] 475 ... is enforceable in federal courts in accordance with its interpretation by New York courts." *Chesley v. Union Carbide Corp.,* 927 F.2d 60, 67 (2d Cir.1991).

### 1. Entitlement to a Charging Lien

NYJL § 475 provides, in pertinent part:

From the commencement of an action ... the attorney who appears for a party has a lien upon his client's cause of action, claim or counterclaim, which attaches to a verdict, report, determination, decision, judgment or final order in his client's favor.... The court upon the petition of the client or attorney may determine and enforce the lien.

■ "A charging lien is a security interest in the favorable result of litigation, giving the attorney equitable ownership interest in the client's cause of action...." *Chadbourne & Parke, LLP v. AB Recur*

---

6. The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if—(1) the claim raises a novel or complex issue of State law; (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction, (3) the district court has dismissed all claims over which it has original jurisdiction, or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction. 28 U.S.C. § 1367(c).

*Finans*, 18 A.D.3d 222, 223, 794 N.Y.S.2d 349, 350 (App. Div. 1st Dep't 2005) (internal citation omitted). "[A]n attorney need not be counsel of record at the time a plaintiff receives judgment or settlement proceeds in order to have a lien on those proceeds, so long as the attorney was counsel of record at one point in the proceedings." *Petition of Harley & Browne*, 957 F.Supp. 44, 48 (S.D.N.Y.1997); *see Itar–Tass*, 140 F.3d at 451. However, "[i]t is well-settled that an attorney loses his right to enforce a charging lien if the attorney withdraws or is discharged for cause." *Petition*, 957 F.Supp. at 48; *see Marrero*, 575 F.Supp. at 840 (denying motion to fix a lien where law firm withdrew "without adequate justification"). "A hearing is required to determine if [an attorney] was discharged for cause, and, if not, the amount of his fee on a quantum meruit basis." *Mason v. City of New York*, 67 A.D.3d 475, 889 N.Y.S.2d 24, 25 (App. Div. 1st Dep't 2009).

▮▮ The threshold question is whether Antonmarchi had cause to discharge his attorneys. "Courts typically find a discharge 'for cause' where there has been a significant breach of legal duty." *Allstate Ins. Co. v. Nandi*, 258 F.Supp.2d 309, 312 (S.D.N.Y.2003). A client must show that his former attorney's conduct "constituted a failure to properly represent his interests." *See Costello v. Kiaer*, 278 A.D.2d 50, 717 N.Y.S.2d 560 (App. Div. 1st Dep't 2000). Antonmarchi's allegations of misconduct against his attorneys pertain almost exclusively to strategic decisions, made by his attorneys, such as seeking enlargements of the time to complete discovery, the time at which to file a motion, and the evidence to include in an opposition brief. Insofar as "differences of opinion concerning strategy do not constitute cause for discharging an attorney[,]" *id.*, the Court finds that the plaintiff did not dismiss his attorneys with cause. The record before the Court evidences that F & A provided "reasonable and necessary services" to Antonmarchi, such that several of Antonmarchi's claims have survived the defendant's summary judgment motion. *See Kantor, Davidoff, Wolfe, Mandelker & Kass, P.C. v. Codata Corp.*, 172 F.3d 38 (2d Cir.1999) (finding law firm was not discharged for cause). At the very least, it cannot be said that Frank or Romero "violated any legally or professionally imposed duty in regard to" Antonmarchi. *See Allstate*, 258 F.Supp.2d at 312. Therefore, F & A is entitled to a charging lien, pursuant to NYJL § 475.

## 2. Amount of Charging Lien

▮▮ "The amount of the charging lien may be determined and fixed prior to the outcome of the underlying suit." *Butler, Fitzgerald & Potter v. Gelmin*, 235 A.D.2d 218, 219, 651 N.Y.S.2d 525, 527 (App. Div. 1st Dep't 1997). Under NYJL § 475, a charging lien may be determined "on a *quantum meruit* basis, ascertaining the reasonable value of the legal services rendered up to the date of" counsel's withdrawal or discharge. *See Sequa Corp. v. GBJ Corp.*, 156 F.3d 136, 148 (2d Cir. 1998). However, "[i]f the amount of the charging lien has been fixed by agreement, ... execution is appropriate on the judgment for the amount agreed to by the parties." *Itar–Tass*, 140 F.3d at 453.

In the instant case, there is no agreement between the parties fixing a charging lien. Rather, F & A requests that the Court fix a charging lien "on a quantum meruit basis." However, Romero argues this amount should be fixed "at the conclusion of [Antonmarchi's] case" because "the court will be in a position to better assess the benefit to Plaintiff or value of the contribution rendered by Frank & Associates."

■ "While the eventual payment of the [charging] lien is contingent upon a favorable outcome for the client in the litigation, the amount of the lien is not dependent upon the result reached in the underlying suit." *Butler, Fitzgerald & Potter*, 235 A.D.2d at 219, 651 N.Y.S.2d at 527. Since client recovery does not affect the amount at which the charging lien should be fixed, the Court is not moved by F & A's argument for postponing the calculation of the lien until the conclusion of Antonmarchi's case.[7]

■ Among the factors a court must consider in assessing the amount of a charging lien on a *quantum meruit* basis are: (1) "the difficulty of the matter"; (2) "the nature and extent of the services rendered"; (3) "the time reasonably expended on those services"; (4) "the quality of performance by counsel"; (5) "the qualifications of counsel"; (6) "the amount at issue"; and (7) "the results obtained (to the extent known)." *Sequa Corp.*, 156 F.3d at 148. It is appropriate, after "consider[ing] all the factors relevant to a *quantum meruit* fee analysis ... [to] turn[ ] to lodestar analysis to reach a specific dollar figure for the value of the services rendered[.]" *Id.*[8] "[T]he determination of the reasonable value of the attorney's services 'is a matter within the sound discretion of the trial court.' " *Id.* at 149 (citation omitted).

In Romero's affirmation submitted with F & A's cross-motion, he contends his firm incurred "$4,516.77 in expenses prosecuting this action." However, the only time record provided by F & A is an invoice of "professional services," dated January 17, 2006, for which the balance due for expenses is $3,080.11. The invoice only documents the hours of services provided between December 1, 2005, and December 23, 2005. F & A fails to identify specifically the legal and non-legal personnel at the firm who rendered the services described in the invoice. No information is provided about Frank or Romero's respective backgrounds and experiences. Moreover, F & A did not provide the Court with information pertaining to the customary fees charged by those who provide similar legal services.

Given the dearth of information provided by F & A regarding the reasonable value of the legal services provided to Antonmarchi, the Court is unable to compute the amount of the charging lien at this juncture. *See Universal Acupuncture*, 370 F.3d at 264 (holding that a court does not "abuse[ ] its discretion by postponing the determination of the fair and reasonable value of an attorney's services [ ] in order to avoid unnecessary delay in the underlying litigation"). However, the Court will permit F & A to cure the deficiencies noted above, by supplementing its cross-motion for a charging lien promptly, with additional information.

## IV. CONCLUSION

For the reasons stated above, Antonmarchi's "motion to dismiss" his attorneys,

---

7. To the extent F & A may be conflating recovery in *quantum meruit* with a charging lien under Section 475, the Court interprets the relevant portion of the firm's cross-motion to be an application for a charging lien only. *See generally Universal Acupuncture v. Quadrino & Schwartz*, 370 F.3d 259, 264–65, n. 6 (2d Cir.2004); *Schneider, Kleinick, Weitz, Damashek & Shoot v. City of New York*, 302 A.D.2d 183, 186–89, 754 N.Y.S.2d 220, 223–25 (App. Div. 1st Dep't 2002) (explaining the three remedies available to attorneys discharged without cause to recover the value of legal services); *Butler, Fitzgerald & Potter*, 235 A.D.2d at 218–19, 651 N.Y.S.2d at 527.

8. The Second Circuit has abandoned the "lodestar" analysis approach in favor of the " 'presumptively reasonable fee' " analysis. *Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany and Albany County Bd. of Elections*, 522 F.3d 182, 190 (2d Cir. 2008).

Docket Entry No. 91, is granted. F & A's cross-motion to withdraw as counsel, pursuant to Local Civil Rule 1.4, is denied as moot.

F & A's cross-motion for a charging lien, pursuant to NYJL § 475, is granted; however, the Court cannot fix an amount for the lien. On or before February 1, 2010, F & A shall submit, to the Court, supplemental data respecting the fees it incurred in the instant litigation, including, the identity of each person who rendered legal services to the plaintiff, the hours expended by each person, the nature of the work performed, and each person's professional experience and background.

SO ORDERED.